IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., d/b/a Jewelry Television®, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:09-CV-143 ) |
| STERLING COMMERCE (AMERICA), INC., | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of "Defendant Sterling Commerce (America), Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" [doc. 33]. Plaintiff has filed a response in opposition to the motion [doc. 35], and defendant has submitted a reply [doc. 39]. The court permitted additional briefing, and plaintiff filed a supplemental brief in further opposition to the motion [docs. 44, 45]. Defendant submitted a response to plaintiff's supplemental brief [doc. 46]. Oral argument is not necessary, and the motion is now ripe for the court's determination. For the reasons that follow, the motion will be denied.

I.

*Background*

Plaintiff sells gemstones as well as jewelry, watches, and other related products on its webpage and television network. Computer software is integral to plaintiff's business for tracking orders, maintaining inventory, and shipping products. Defendant develops, implements, and licenses commercial software. In December 2006, the parties agreed to enter a series of agreements that included *inter alia* the licensing of defendant's software and the provision of professional and educational services to plaintiff by defendant ("Agreements"). Prior to entering the Agreements with defendant, plaintiff's software systems had been designed by its employees in the 1990's, the "legacy" system.

Plaintiff alleges that throughout the agreement process it made clear to defendant that the new software systems had to integrate with its existing legacy system, but according to plaintiff they did not. Plaintiff further alleges that defendant was incapable of implementing the software systems, and in April 2008 it fired defendant's project manager, replacing him with one of its own employees. Plaintiff then took over the project and "salvaged" what it could of some of the software programs.

As a result, plaintiff filed its original complaint on April 3, 2009, in which it alleged multiple causes of action. Plaintiff was permitted to file an amended complaint [doc. 16] and a second amended complaint [doc. 32]. Defendant's motion to dismiss plaintiff's original complaint was denied as moot [doc. 34].

## II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In resolving a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bowman v. United States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citing *Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)).

In addressing a motion under Rule 12(b)(6), the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Gee v. UnumProvident Corp.*, No. 1:03-CV-147, MDL 1:03-MD-1552, 2005 WL 534873, at *7 (E.D. Tenn. Jan. 13, 2005) ("[I]f documents are attached to, incorporated by, or specifically referred to in the complaint, they are considered part of the complaint and the Court may consider them.") (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

III.

*Analysis*

**TCPA Claim** - **Count Four**

Defendant contends that plaintiff's Tennessee Consumer Protection Act ("TCPA") claim is barred by the statute of limitations. The statute of limitations for claims brought pursuant to the TCPA is codified at Tenn. Code Ann. § 47-18-110 and states in pertinent part: "Any action commenced pursuant to [the TCPA] shall be brought within one (1) year from a person's discovery of the unlawful act or practice. . ." *Leonard v Leo's Exterminating Servs., Inc.*, No. E2009-01398-COA-R3-CV, 2010 WL 2134145, at *12 (Tenn. Ct. App. May 27, 2010) (citing Tenn. Code Ann. § 47-18-110). The Tennessee Court

4

of Appeals in *Schmank v. Sonic Automotive, Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076 (Tenn. Ct. App. May 16, 2008) explained that the inclusion of the word "discovery" incorporates the discovery rule into the TCPA. "[T]he Tennessee legislature has determined that a plaintiff's TCPA claim accrues at time of the 'discovery of the unlawful act or practice,' thereby making applicable the 'discovery rule' first applied over thirty years ago. . ." *Id.* at *2 (citations omitted). The *Schmank* court noted that the Tennessee Supreme Court had recently restated the discovery rule, which it quoted as follows:

> It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, *or in the exercise of reasonable care and diligence, should know that an injury has been sustained*. The discovery rule does not, however, toll the statute of limitations until the plaintiff *actually* knows that he or she has a cause of action. *The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct.* Were statutes of limitations strictly applied, plaintiffs would be required to sue "to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable." The discovery rule is intended to prevent the inequity such a strict application of the rule would produce.

*Id.* at *2-3 (quoting *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (emphasis in original) (internal citations omitted).

In general, application of the discovery rule is a fact question for the jury to decide. *Id.* at *3 ("[T]he issue of whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine.") (quotation marks and citations omitted); *see also Fortune v. Unum Life Ins. Co.*,

5

No. W2009-01395-COA-R3-CV, 2010 WL 3984705, at *10 (Tenn. Ct. App. Oct. 12, 2010) (citing *id.*). "However, where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate." *Schmank*, 2008 WL 2078076 at *3.

Plaintiff filed the original complaint on April 3, 2009. Defendant argues that the allegations in the second amended complaint concerning alleged unfair and deceptive practices in violation of the TCPA occurred in October and December 2007. Defendant sets out in chart fashion allegations from the second amended complaint as support for its contention that plaintiff discovered defendant's alleged misrepresentations more than one year prior to filing the original complaint.

Plaintiff responds that the allegations relied on by defendant merely reflect early warning signs that defendant's pre-contract representations might be false. The allegations do not show that plaintiff was aware or on notice of an injury resulting from those representations. Plaintiff further argues that the issue of when the cause of action accrued is a jury question.

It may be that once the factual record has been developed through discovery that plaintiff in the exercise of reasonable care and diligence should have known that it had sustained an injury as early as October or December 2007. Or the record may show that factual issues remain as to when the TCPA claim accrued. In any event, this case is presently

in the pleading stage, and the court is not prepared to say as a matter of law based upon the face of the complaint that plaintiff's TCPA claim is barred by the statute of limitations. Therefore, the motion to dismiss will be denied as to the TCPA claim.

## Negligence/Gross Negligence Claims - Count Five

Defendant argues that plaintiff's claims for negligence and gross negligence are barred by the economic loss doctrine. The economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Ham v. Swift Transp. Co., Inc*., 694 F. Supp. 2d 915, 921 (W.D. Tenn. 2010) (quoting *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp*., 293 S.W.3d 487, 488 (Tenn. 2009)). The doctrine provides that "[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract." *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc*., 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001). The court in *Trinity* stated that the economic loss doctrine "was created by courts to avoid the coming collision between warranty and contract on the one hand and the torts of strict liability, negligence, fraud, and misrepresentation on the other." *Id*. at 171 (internal quotation marks and citation omitted). "Under Tennessee law, [t]he economic loss doctrine draws the line between tort and warranty by barring recovery for economic losses in tort actions, and helps ensure that contract claims are resolved by contract law." *Corso Enters., Inc. v. Shop at Home Network, Inc*., No. 3:04-0260, 2005 WL 2346986, at *6 n.7 (M.D.

Tenn. Sept. 26, 2005) (internal quotation marks and citation omitted). "Thus, governance by the UCC of the contract at issue is a prerequisite to the application of the economic loss doctrine and resulting *preclusion of recovery in tort*." *Id.* (emphasis added).

Defendant argues that this contract for software is one for the sale of goods, citing authority in support of its contention: *Comshare, Inc. v. United States*, 27 F.3d 1142, 1145 n.2 (6th Cir. 1994) ("Courts and academic commentators have been moving toward the position that computer software is a 'good' covered by the sales provisions of the [Uniform Commercial] Code."); *Executone of Columbus, Inc. v. Inter-tel, Inc.*, 665 F. Supp. 2d 899, 910 n.3 (S.D. Ohio 2009) ("Courts consider software a "good" within the meaning of the UCC.") (citations omitted). Defendant also contends that plaintiff's losses are economic losses only. Plaintiff contends that the contract is predominately one for services and also that it is seeking damages to its property.

The court has been unable to find any Tennessee authority holding that software is a "good," although as pointed out by defendant other jurisdictions have considered software to constitute "goods" within the meaning of the Uniform Commercial Code ("UCC"). *Comshare*, 27 F.3d at 1145 n.2; *Executone*, 665 F. Supp. 2d at 910 n.3; *see also Smart Online, Inc. v. Opensite Techs., Inc.*, No. 01 CVS 09604, 2003 WL 21555316 (N.C. Super. June 17, 2003) (court found agreement involving sale and licensing of software was sale of goods and UCC applied).

Even if it is assumed for the purposes of argument that software is a "good," that does not, however, carry the day for defendant's position. This contract contains a significant "Professional Services Agreement," and defendant was also to implement the software. Thus, the contract called for defendant to provide services along with the software that was licensed to plaintiff. The parties' dealings involved a mixed transaction, and a determination has to be made regarding the predominate purpose of the transaction. In Tennessee, the predominant factor test is applied in such situations. *See Hudson v. Town & Country True Value Hardware, Inc.*, 666 S.W.2d 51, 53 (Tenn. Ct. App. 1984) ("If the predominant assets to be transferred are goods, the U.C.C. governs, but if the predominant assets are non-goods, the U.C.C. has no application."); *see also Pass v. Shelby Aviation, Inc.*, No. W1999-00018-COA-R9-CV, 2000 WL 388775, at *3 (Tenn. Ct. App. Apr. 13, 2000); *Gentech Const., LLC v. Natare Corp.*, No. 1:07-cv-192, 2011 WL 1257943, at *20 (E.D. Tenn. Mar. 31, 2011) ("Under the predominant factor test, the contract is viewed as a whole to determine if the predominant assets to be transferred are goods or nongoods.").

The distinction is defining because "[a] contract which calls for the rendition of services is not governed by Article 2 of the Uniform Commercial Code." *Moulds v. James F. Proctor, D.D.S.*, 1991 WL 137577, at *4 (Tenn. Ct. App. July 29, 1991); *see also Aluminum Vinyl Sales Co. v. Woerz*, No. 03A01-9304-CV-00172, 1993 WL 367125, at *3 (Tenn. Ct. App. Sept. 20, 1993) ("The Uniform Commercial Code does not apply to a contract for the rendition of services"). If the contract at issue is predominately one for services, the UCC would not apply nor would the economic loss doctrine apply.

9

In *Ham v. Swift Transportation Co., Inc.*, 694 F. Supp. 2d 915, 921 (W.D. Tenn. 2010), the district court addressed whether the economic loss doctrine would apply to a claim for alleged negligent services, a question not yet addressed by the Tennessee Supreme Court. After a thorough analysis, the district court held:

> [T]he Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services.
>
> . . . [T]he Court concludes that the Tennessee Supreme Court would decline to extend the economic loss doctrine to cases involving the provision of services if squarely faced with this question.

*Id.* at 923.

At the pleading stage, a determination cannot be made whether the transaction between the parties herein had as its predominant purpose the provision of services, as alleged by plaintiff, or the sale of goods as alleged by defendant. The record must be further developed and argued before such determination can be made. Therefore, defendant's motion as to count five will be denied.

Defendant also moves to dismiss plaintiff's claims for fraud in the inducement, promissory fraud, and negligent misrepresentation. However, until the nature of the parties' transaction has been determined and implications regarding the UCC are better known, the court does not want to engage further ruling on plaintiff's tort claims. Therefore, the motion to dismiss will also be denied as to these three claims.

## Breach of Implied Warranties - Counts Seven & Eight

Defendant moves to dismiss plaintiff's claims for breach of implied warranties on the grounds that the Agreements expressly disclaimed all implied warranties. Plaintiff responds by arguing that the disclaimers are of no force and effect because the contracts are voidable for misrepresentation. Defendant responds to this contention by arguing that plaintiff continued to use defendant's software and thus affirmed the Agreements. The court permitted additional briefing [docs. 45, 46] on this issue, which delved into election of remedies, a matter well beyond the current stage of this case.

Under the Federal Rules of Civil Procedure, a plaintiff may plead alternative claims and even inconsistent claims. "A party may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). At this pleading level, plaintiff can assert its inconsistent claims regarding the contract. Accordingly, defendant's motion as to the implied warranty claims will be denied.

IV.

*Conclusion*

Therefore, for the reasons stated above, defendant's motion to dismiss will be denied in its entirety. An order consistent with this opinion will be entered.

ENTER:

          s/ Leon Jordan          
       United States District Judge