# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., d/b/a JEWELRY TELEVISION, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-143 |
| | ) | |
| v. | ) | McDonough/Guyton |
| | ) | |
| STERLING COMMERCE (AMERICA), INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT STERLING'S TRIAL BRIEF

Defendant Sterling Commerce (America), Inc. respectfully submits this brief to address issues that it believes will or may arise at trial, given what it understands are plaintiff's current allegations and intentions for trial. Some of the issues covered are new and based on recent positions taken by plaintiff; other issues already have been briefed in the case, including at the summary judgment stage, but they remain unresolved or otherwise relevant to the trial. Sterling avoided re-covering the basic facts in issue, given the Court's existing familiarity with the case.

**1. There are threshold issues as to what claims JTV may assert at trial**

    **a. New fraudulent concealment or omission claim**

JTV hopes to assert a claim for alleged fraudulent omissions, concealments, and failures to disclose, as confirmed by its proposed jury charge. *See* Dkt. 692, at 19. It did not plead this claim in its complaint, much less with Rule 9(b) particularity. Even now, JTV does not list fraudulent concealment among its claims in the Pretrial Order.

A claim for fraudulent concealment is a separate claim from fraudulent inducement. To establish a claim for fraudulent concealment,

a plaintiff must show (1) the defendant had a duty to disclose a known fact or condition; (2) the defendant failed to disclose it; (3) the plaintiff reasonably relied upon the resulting misrepresentation; and (4) the plaintiff consequently suffered injury.

*Wright v. Wacker-Chemie AG*, 2014 WL 3810584, at \*7 (E.D. Tenn. 2014) (cites omitted). There "can be no tort of fraudulent concealment absent a duty to disclose." *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007) (cite omitted). The duty to disclose "arises in only three scenarios: 1. Where there is a previous definite fiduciary relation between the parties. 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other. 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith." *Id.*; *see also Wright*, 2014 WL 3810584, at \*7.

Unless a duty to disclose exists, there is no exception to the general rule that "one party to a transaction usually has no duty to disclose material facts to the other." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. App. 2009). Here, the Second Amended Complaint does not plead circumstances that would create such a duty. JTV did not plead that the parties were in a fiduciary relationship or that the transaction was intrinsically fiduciary – the first and third exceptions. Likewise, in order "for a duty of disclosure to arise under [the second] exception, the evidence must show that [Sterling] knew or had reason to know that [JTV] was placing its trust and confidence in [Sterling] and was relying upon [Sterling] for counsel and information." *Id.* at 754. JTV never pleaded any such thing, despite having to plead this element of fraud with particularity. Fed. R. Civ. P. 9(b).

Moreover, any such claim would be meritless. This Court rejected JTV's argument that Sterling owed a professional duty of care outside of a contract relationship. "The Court is especially reluctant to create a free-standing duty where, as here, the dispute is between two

highly sophisticated parties under a tightly negotiated contract." Dkt. 419, at 44. This was an arm's-length transaction between big corporations. *Id.*; *Hayes v. SpectorSoft Corp.*, 2009 WL 3713284, at *12 (E.D. Tenn. 2009) (refusing to find a duty of care or special relationship between a software vendor and its customer). There was no special relationship here.

Having not pleaded a claim for fraudulent concealment, JTV cannot attempt to try such a claim by consent, by saying "omissions" and "concealment" in the Pretrial Order. Such a claim at this late date would unfairly prejudice Sterling, which does not agree to try it by consent.

### b.    New punitive damages theory

JTV hopes to allege a new basis for punitive damages. It pleaded that "because Sterling's actions were committed knowingly, willfully, and in conscious disregard of the rights of JTV, JTV is entitled to recover punitive damages in an amount to be determined by the trier of fact." Dkt. 32, at ¶ 125. This is not the standard for an award of punitive damages, which requires that the defendant "acted either intentionally, fraudulently, maliciously, or recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Catching its omission, JTV put in the proposed Pretrial Order that it seeks punitive damages based on intentional, fraudulent, malicious, or reckless conduct by Sterling. JTV has no right to change its basis now.

Even considering the rest of its pleadings, and ignoring what it pleaded as the basis of its punitive damages request, JTV only pleaded fraudulent conduct. To begin, it has not pleaded intentional conduct as a basis for punitive damages. Intentional and knowingly are not the same. "In general, . . . 'intentional' corresponds loosely with the common law concept of specific intent, while 'knowingly' corresponds loosely with the concept of general intent." *State v. Womack*, 2005 WL 17428, at *8 (Tenn. Crim. App. 2005), *overruled on other grounds, State v. Clark*, 452 S.W.3d 268 (Tenn. 2014). JTV was required to allege that Sterling intended the nature or consequences of the act, not merely the act itself. *See Beal ex rel. Putnam v. Walgreen*

*Co.*, 408 F. App'x 898, 905 (6th Cir. 2010). JTV never pleaded facts that establish this scienter as to any particular misrepresentation.

Nor has it pleaded recklessness, which means conscious disregard that "requires that the actor be aware of a substantial and unjustifiable risk of harm." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 37, 39 (Tenn. 2005). JTV never pleaded that Sterling was actually aware of a substantial and unjustifiable risk of some particular harm and proceeded anyway. JTV's assertion that Sterling made statements with "reckless" disregard for their truth does not meet these criteria. Its pleadings fail to provide factual support for the reckless scienter. *See Heinrich v. Waiting Angels Adoption Servs., Inc*., 668 F.3d 393, 406 (6th Cir. 2012) (the courts "have uniformly held inadequate a complaint's general averment of [scienter] . . . unless a complaint also sets forth specific facts that make it reasonable").

Finally, JTV never pleaded that Sterling acted maliciously, such that it was "motivated by ill will, hatred, or personal spite." *Hodges*, *supra,* 833 S.W.2d at 901. And its new assertion of malicious conduct in the Pretrial Order comes totally out of the blue.

This is not the way to try a punitive damages claim, which Tennessee restricts to "cases involving only the most egregious of wrongs." *Id.* at 900. Here, JTV is trying to change horses as to what wrong Sterling committed. JTV had years to amend its pleadings. It may not now try an entirely new punitive damages theory to unfairly prejudice Sterling.

### c. New product defect claim

JTV now also argues that it will use QVC evidence to show a "product defect within the core  . . . of [the] nWMS" software that was deployed at JTV.  See Dkt. #682 at 8. JTV's prior pleadings do not allege that Sterling's software was defective. Sterling objects to this unpleaded claim, as it would unfairly surprise and prejudice Sterling.

## 2.     There are legal issues with the claims that JTV will pursue at trial

### a.     Breach of express warranty

At the appropriate time, the Court will assess whether JTV's warranty claim fails because Ohio abrogated common law product liability claims. This claim has not existed for 12 years.

In 2005, the Ohio General Assembly "eliminated common law product liability causes of action" in an amendment to the Ohio Products Liability Act. *Mitchell v. Proctor & Gamble*, 2010 WL 728222, at *3 (S.D. Ohio 2010); *see also* Ohio Rev. Code §2307.71(B) ("Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action.").

JTV's pretrial order inserts fail to identify *any* particular contract provision as an express warranty that will be the subject of its breach claim at trial. Nevertheless, JTV previously pleaded a violation of the License No. 1 and No. 2 express warranty for the "functionality" of the software. Dkt. 32, at ¶169. Based on Sterling's understanding, JTV's allegation may be that the lack of functionality in JTV's software damaged JTV's entire system. Since JTV asserts this claim common law, the claim is abrogated by statute.

> [C]ommon law warranty claims have also been abrogated by the OPLA, and therefore, insofar as Plaintiff asserts warranty claims under the common law, those claims have been abrogated by virtue of O.R.C. § 2307.71(B), and summary judgment in favor of Defendants on such claims is proper as a matter of law.

*Miller v. ALZA Corp.*, 759 F. Supp. 2d 929, 943 (S.D. Ohio 2010) (cites omitted). And JTV's disavowal of the U.C.C. is further confirmation that the claim is a common law action. JTV has not pleaded a statutory warranty claim. *See Miller*, 759 F. Supp. 2d at 944; *Donley*, 2009 5217310, at *4.

### b. Breach of contract

JTV has accused Sterling of breaching nine of the parties' contracts that were negotiated at different times and entail different duties and benefits. These claims raise a number of issues.

### i. Evidence of specific damages

Under Ohio law, the "essential elements of a breach of contract claim are a contract, performance by the plaintiff, breach by the defendant, and resultant damage to the plaintiff." *Columbus Green Bldg. Forum v. State*, 980 N.E.2d 1, 29 (Ohio App. 2012). "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio App. 1996). "A claimant seeking to recover for breach of contract must show damage as a result of the breach." *Id.* "Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Id*.

Here, JTV alleges that Sterling breached contract obligations that are "too numerous" to list. Dkt. 702, at 9. It has not identified what damage resulted from breach of any particular contract (of the nine), much less any individual obligation within the contracts. This presents problems for the jury charge. Dkt. 692 at 24. The Ohio Jury Instructions require a separate instruction for *each* contract at issue and a description of *each* obligation allegedly breached. *See* 1 CV Ohio Jury Instructions (OJI) 501.1. JTV instead proposes to tell the jury that JTV alleges that "Sterling committed multiple breaches of the parties' Agreements" and have the jury answer one question for all breaches of the nine contracts. Dkt. 692 at 24, 38 (Q. 11).

JTV has yet to state what damages "result from" and "correspond to" a particular contract obligation that it says Sterling breached. *See Textron*, 684 N.E. at 1266. Without such proof, the contract claims fail as a matter of law.

### ii.  Contract interpretation

When a contract is clear and unambiguous, "its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271 (Ohio 1984) (cite omitted). "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Id.*

The parties may differ in their interpretations of the contracts. At this point, JTV has not revealed its breach theories in enough detail to see whether the parties disagree on the meaning of particular contract provisions. If there is a disagreement, and the contract is unambiguous, this Court should resolve the meaning of the contract as a matter of law. If the contract is ambiguous, then the issue of interpretation may be a fact issue for the jury.

Notably, the Court already ruled on some issues of contract interpretation in its summary judgment order. All of the contracts must be interpreted consistently with these rulings. For example, the contracts must be interpreted consistently with the finding that, after the 2008 meeting of its Technology Steering Technology, "JTV made a unilateral decision to reduce the scope of the immediate work," and "JTV did not immediately tell Sterling of the altered plans." Dkt. 419, at 5-6. This is a modification of the parties' contracts, and any issues of breach or fraud must account for this contractual modification.

### iii.  Substantial performance

The "essential elements of a breach of contract claim are a contract, performance by the plaintiff, breach by the defendant, and resultant damage to the plaintiff." *Columbus Green Bldg.*

*Forum v. State*, 980 N.E.2d 1, 29 (Ohio App. 2012). The second element requires a plaintiff to prove that it had substantially performed under the contract, if performance was due, and that it was not in "material breach." *O'Brien v. Ohio State Univ.*, 10th Dist. No. 06AP–946, 2007–Ohio–4833, at *10-11. So to recover against Sterling for the breach of nine contracts, JTV must prove that it was substantially performing its obligations and not in material breach of the contracts in issue.

In this case, Sterling lists multiple provisions that JTV breached, and it must prove it had substantially performed and not materially breached each such contract.

### iv.     Contractual damages provisions

As Sterling argued in its summary judgment papers, the damage limitations provisions in the USLA and the Professional Service Agreement bar consequential and incidental damages, punitive damages, lost profits, and damages that exceed the amounts authorized in the USLA and the Professional Services Agreement. Dkt. 259 at 51-54. The Schedule 1 and 2 Licenses incorporate the USLA's damage provision. The Statements of Work incorporate the Professional Services Agreement's limitation provision. There is no dispute as to the content of the liability exclusions. Dkt. 419, at 43.

### v.     Affirmative defenses

Sterling will present evidence at trial to prove its affirmative defenses that JTV waived the allegedly breached contract obligations, including by preventing Sterling from doing its job. JTV is also estopped from enforcing the contracts since it acquiesced to Sterling's interpretation of the contract over a long period of time, and Sterling relied upon this acquiescence to its detriment. *See Finkbeiner v. Lutz,* 337 N.E.2d 655, 658 (Ohio App. 1947); *Nat'l City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland*, 74 N.E. 2d 273, 291 (Ohio App. 1975).

The Court's prior findings support rulings as a matter of law on the viability of these defenses. For example, if reduction in scope is not treated a modification of the contract, JTV's unilateral reduction in the scope of the project would compel judgment as a matter of law that JTV waived Sterling's performance of the obligations that were cut as a result of the reduction in scope. JTV is estopped from attempting to enforce those provisions against Sterling.

### c. Fraudulent inducement and promissory fraud

#### i. Fraudulent inducement

JTV attempts to conflate its claims for promissory fraud and fraudulent inducement, but the two claims differ in at least three respects.

A claim for fraudulent inducement pertains to a misrepresentation of past or present facts, while a claim for promissory fraud pertains to a false promise of future performance. To sustain a fraudulent inducement claim, a plaintiff must prove that the defendants

> (1) made a false statement concerning a fact material to the transaction[,]
>
> (2) with knowledge of the statement's falsity or utter disregard for its truth[,]
>
> (3) with the intent of inducing reliance on the statement,
>
> (4) that the statement was reasonably relied upon, and
>
> (5) that an injury resulted from this reliance.

*Wright v. Wacker-Chemie AG*, 2014 WL 3810584, at *6-7 (E.D. Tenn. 2014) (cite omitted). Where the misrepresentation pertains to future action, the claim is for promissory fraud and "the plaintiff must prove more than a 'subsequent failure to keep the promise.'" *Kelly v. Int'l Capital Resources, Inc.*, 231 F.R.D. 502, 517 (M.D. Tenn. 2005) (cite omitted). The plaintiff must prove that the defendant had no intention of carrying out the promise at the time it was made. *Id.; Carter v. Patrick*, 163 S.W.3d 69, 77 (Tenn. App. 2004); *Wright,* 2014 WL 3810584, at *6-7.

In addition, promissory fraud cannot be established merely by proving reckless disregard of the statement's falsity. Rather, one must prove that the defendant "had an actual present intent not to fulfill the promise." *Wright*, 2014 WL 3810584, at *9.

Finally, while fraudulent inducement can be proven by circumstantial or direct evidence of the defendant's intent, a promissor's intent may be proven by direct evidence only. In *Wright*, the court recognized that while the Tennessee Supreme Court had not yet recognized the tort of promissory fraud, Tennessee courts have extended the tort

> "to those cases where the statement of intention is shown to be false when made (i.e., a misrepresentation of actual present intention ) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 80-81 (Tenn. Ct. App.1983) (emphasis added); *see also id.* at 82 (Conner, J., concurring) ("I must agree with the majority's finding that the supreme court has indicated an unwillingness to apply the doctrine except in those cases where there is *direct proof* of a misrepresentation of actual present intention.")

2014 WL 3810584, at *9 (emph. added). In short, the courts require direct proof of an alleged misrepresentation of actual present intention. *See Eddings v. Sears Roebuck & Co.*, 2002 WL 1592540, at *5-6 (Tenn. App. 2002) (noting Tennessee Supreme Court's "noticeable unwillingness to apply the doctrine except in those cases where there is direct proof of a misrepresentation of actual present intention"); *Kandel v. Ctr. for Urological Treatment & Research, P.C.*, 2002 WL 598567, at *8 (Tenn. App. 2002) ("The Tennessee Supreme Court is unwilling to apply the doctrine 'except in those cases where there is direct proof of a misrepresentation of actual present intention.'"). One unpublished Tennessee opinion permitted circumstantial evidence to establish a promissor's intent, *see Am. Cable Corp. v. ACI Mgmt. Inc.*, 2000 WL 1291265, at *5-6 (Tenn. App. 2000), but the decision is irreconcilable with *Farmers*. Indeed, the decision allowed an inference of fraud from circumstances that permit an equally

reasonable inference of non-fraudulent conduct. *See Eddings*, 2002 WL 1592540, at *6. For these reasons, this Court should rule that direct proof is required to prove promissory fraud.

### ii.    Promissory fraud

JTV says it is asserting a claim for promissory fraud. Dkt. 702, at 1. But it fails to identify a single "promise" that Sterling failed to fulfill and made with an intent not to perform. Accordingly, since the Pretrial Order supplants the pleadings, JTV's claim for promissory fraud should be dismissed. Nor do its prior pleadings identify any specific representation of future action that Sterling made without intent to perform. *See Wright*, 2014 WL 3810584, at *8-10 (finding that no promissory fraud claim was adequately pleaded); *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*, 2016 WL 4239920, at *6 (M.D. Tenn. 2016) (concluding that dismissal is proper where "particular misrepresentations" are not "elucidated in the complaint"). JTV is also entitled to judgment as a matter of law on any fraudulent misrepresentations of past or present fact that are not elucidated with specific statements. *Id.*

### iii.    Puffery and sales talk

JTV claims that Sterling engaged in fraud in connection with the parties' agreements in 2006 and 2007 for licensing and implementing certain software applications. Sterling sought summary judgment on the claims asserting that the statements were nothing more than sales puffery and forward-looking statements, not actionable misrepresentations. In its order, the Court noted that "many" of the alleged misrepresentations "amount to mere puffery." Dkt. 419, at 30. "Many of Sterling's alleged misrepresentations may amount to nothing more than generic statements of quality or ability." *Id.* at 27. In other words, at least in part, JTV relies on mere sales talk that lacks the requisite specificity to support a claim for fraud.

A misrepresentation must contain a specific material statement of past or present fact. *See McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130, 132 (Tenn. App. 1982); *Adkins v. Ford*

*Motor Co.*, 446 F.2d 1105, 1108 (6th Cir. 1971) (noting that only specific and quantifiable statements of fact will support a fraud claim).

Puffery is the opposite of this. It is a "statement that embodies exaggeration[ ], the truth or falsity of which cannot be determined easily, that amount[s] to no more than an expression of the seller's opinion about" a thing's character or quality. *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789 (Tenn. App. 2012) (statement that goods were "superior" was mere puffery, not an actionable misrepresentation); *Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 100 (Tenn. App. 1996) ("[A] seller's characterization of an automobile as a 'dandy' or a 'good little car' or the 'pride of our line' or the 'best in the American market' will not give rise to liability [for intentional or negligent misrepresentation].") Puffery includes general, vague statements and sales talk. *McElroy, 632 S.W.2d at 130, 132; Bennet v. CMH Homes, Inc.*, 661 F. App'x 329, 336 (6th Cir. 2016) ("'Puffing' refers to loose general statements made by sellers in commending their products.") (cites and quote marks omitted); *Adkins*, 446 F.2d at 1108 ("General assurances of good quality and sales talk are not enough" to support a misrepresentation claim).

Nor can conjecture and predictions about future events constitute intentional or negligent misrepresentations, even if they later prove to be false. *See McElroy*, 632 S.W.2d at 130; *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (Tennessee law). Reliance on such representations is legally unreasonable.

Although JTV has yet to identify all of the supposed misrepresentations it seeks to try, Sterling submits that the following misrepresentations are non-actionable puffery:

- Sterling's system would "improve labor and equipment productivity and accuracy";

- Sterling would provide "the most complete end-to-end solution for [its] enterprise inventory and warehouse management needs";

- JTV can "Expect Impressive Results . . . operational costs go down . . . inventory costs go down . . . [a]nd revenues increase";

- Sterling's "Business Process Platform delivers the following benefits: Maximize the ROI on Existing IT Investments . . . Minimize the Business Transformation Costs . . . Reduce System Support Costs";

- "Sterling delivers the supply chain industry's only, built-from-the ground-up, service oriented architecture that leverages the latest technology standards to ensure maximum flexibility and scalability"; and

- Sterling will provide "software, system integration services, and world class product support services at cost effective rates."

Pl.'s Supp. Responses at 203-04, 208-10. JTV could not reasonably have relied on any of these statements, since it was a sophisticated technology company aware of the technical requirements for a potential software solution.

Other accused statements are predictions about future events, not representations of past or current facts. The forward-looking statements include representations that Sterling's nWMS will "[i]mprove customer satisfaction and increase profitability of fulfillment network" and further offer "[c]omplete [i]nventory [v]isibility and [c]ontrol"; Sterling OMS will "support substantial sales growth in the future; JTV can "[e]xpect [i]mpressive [r]esults . . . [as] operational costs go down . . . inventory costs go down . . . [a]nd revenues increase"; and JTV would "thrive in the [g]lobal [e]conomy by optimizing the performance of their business communities" should it purchase the Sterling software. These representations are predictions and sales talk about what would happen at a later time as a result of current efforts. They do not state current or past facts, so they are not actionable even if later proven false. *See McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. App. 1982); *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).

#### iv. Damages from reliance

JTV cannot prove what damages resulted from its reliance on any particular alleged misrepresentation. Wright, 2014 WL 3810584, at *6-7. It has not even bothered to reveal all of its misrepresentation theories, much less state what damage was caused by its reliance on which misrepresentation. Nor has JTV broken down what damages were caused by its entry into each of the contracts. It thus cannot prove a necessary element of its claim, and judgment as a matter of law should be granted for Sterling.

#### v. Failure to tender back

A party wishing to void a contact for fraud must promptly return its benefits. *Brandon v. Wright*, 838 S.W.2d, 532, 534 (Tenn. App. 1992). Here, JTV made no effort to tender back Sterling software, related software documentation, and the like after it learned about the alleged "fraud." JTV instead successfully installed the WMS-Inbound and PO software and continues to use it today. As a result, any claim that each of the contracts is "voidable" based on fraudulent inducement or promissory fraud fails as a matter of law.

#### vi. Waiver, estoppel, and ratification

While Sterling denies that it committed fraud, it will present evidence of its affirmative defenses of waiver, estoppel, and ratification. In 2008, after being informed of JTV's decision to change the project scope, which JTV says was a "result" of "Sterling's misrepresentations," Dkt. 61, Sterling sent an email outlining the services it would provide under this "de-scoped" plan. At that point, there was "consensus" within JTV that this modified plan was appropriate for what it wanted, and it was in "agreement that that was what we were doing." Sterling's email confirmed that the go-live date for all modules would not be met; Sterling would not deliver all deliverables listed in the Implementation SOW; and WMS, OMS, and PO would not all be implemented when and as originally promised. Instead, as JTV had decided, only WMS-Inbound and PO

would be installed before the yearend peak buying season. In so doing, JTV ratified the contract as a matter of law, thereby waiving the right to claim it was fraudulently induced.

Once a contracting party discovers that it has been defrauded, it must "promptly notify the other party of his intention to rescind." *Brandon v. Wright*, 838 S.W.2d 532, 534 (Tenn. App. 1992). Failure to do so waives the right to sue for fraud. *Id.*; *Fed. Deposit Ins. Corp. v. Newton*, 737 S.W.2d 278, 281 (Tenn. App. 1987); *Pearsons v. Wash. Coll.*, 172 S.W. 314, 316 (Tenn. 1914) (same). JTV could have rescinded the contract when it learned of the alleged fraud. But it moved forward, performing the contract as modified, thereby "waiv[ing] [its] right to rescind" and to pursue fraud claims. *McNeil v. Nofal*, 185 S.W.3d 402, 410-11 (Tenn. App. 2005); 37 C.J.S. Fraud §119 ("waiver of the right to rescission operates as a waiver of the right to maintain an action for damages for the fraud"). Any claim by JTV that full knowledge of the fraud is required ignores Tennessee law.

> It is solely at the option of the party upon whom the fraud is practiced, whether he will be bound by the agreement or not. Yet if he determine to avoid a contract . . . he must give notice of such determination to the other party within reasonable time after his discovery of the fraud; and if, with a knowledge of the fraud, he acquiesce in the contract expressly, or do any act importing an intention to stand by it, or remain silent under circumstances which plainly indicate a continuing assent thereto, he can not afterward avoid it.

*Derryberry v. Hill*, 745 S.W.2d 287, 292 (Tenn. App. 1987) (emph. added) (cite omitted); *see also Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006)).

### d. Negligent misrepresentation

To prove negligent misrepresentation, a plaintiff must show that the defendant was acting in course of his business, profession, or employment, or in transaction in which he has pecuniary interest; the defendant supplied information to the plaintiff meant to guide others in their business transactions; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the

information and suffered financial loss as a result. *See Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

Again, JTV has not identified all misrepresentations that it intends to litigate at trial, despite the specificity requirements of Rule 9(b). The Pretrial Order should not permit JTV to pursue any claim for misrepresentation that was not "elucidated in the complaint" by identifying the "specific statements" that allegedly constitute negligent misrepresentations. *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.,* 2016 WL 4239920, at *3, 6 (M.D. Tenn. 2016).

While Sterling maintains that it made no negligent misrepresentations that JTV would have relied upon, the same affirmative defenses apply to each claim. For the reasons explained above, many of the alleged negligent misrepresentations are mere puffery and sales talk. And the affirmative defenses of waiver, ratification, and estoppel apply with equal force to the negligent misrepresentation claim. Further, the same damages problems also plague the negligent misrepresentation claim, as JTV has not proven damages with reasonable certainty attributable to any particular misrepresentation.

### e.    Election of remedies

JTV must elect between contract and tort remedies to prevent a double recovery. *See Shahrdar v. Glob. Hous., Inc*., 983 S.W.2d 230, 238 (Tenn. App. 1998) (plaintiff is entitled "to recover damages incurred during the period of his employment as a result of promissory fraud if he can show that he incurred damages beyond those awarded for breach of contract") (cite omitted). "Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery." *Id.* (vacating award of damages on the claim of misrepresentation and promissory fraud where plaintiff had neither pled nor proven damages different in kind or

amount sufficient to justify an award of damages beyond what he was awarded for breach of contract).

### f.     Unrecoverable damages

JTV seeks inconsistent damages for rescission and benefit of the bargain. It wants to pay nothing for Sterling's software and services yet still receive the value of the promised benefits of the software and services. It should not be permitted to *add* rescission damages to benefit-of-the-bargain damages, as its expert report does. Rather, it should be present rescission damages and benefit-of-the-bargain damages as alternatives to the jury.

Under Ohio law, a party who has been fraudulently induced into a contract has the option of rescinding it or retaining it and suing for damages based upon fraudulent inducement. An election of remedies is required because it is inconsistent to allow the defrauded party to rescind the contract and, at the same time, get the benefits of the contract. *See Sabbatis v. Burkey*, 853 N.E.2d 329, 332 (Ohio App. 2006) (cites omitted). Similarly, under Tennessee law, a purchaser "may not both affirm and at the same time disaffirm his contract." *Isaacs v. Bokor*, 566 S.W.2d 532, 537-38 (Tenn. 1978). In other words, "a party may not affirm a contract by retaining its benefits and at the same time assert that the contract is void." *New Life Corp. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926 (Tenn. App. 1996).

While JTV may elect its remedies post-verdict, Dkt. 419 at 46, it should not be permitted to present inconsistent alternatives as damages that simply can be added together. Its expert does so. He calculates damages for the amounts paid to Sterling under the contract and JTV's internal labor costs for project planning and implementation during the project. Bayley report ¶5. These are rescission damages: what JTV would not have paid if it never had entered the contract. But he also delineates the damages from the lack of Sterling's promised functionality by June 2008. *Id*. These are benefit-of-the-bargain damages: what JTV would have received if Sterling had

performed the contract as promised. JTV's damages expert adds these two inconsistent damages together to arrive at the total damages figure that it seeks. *Id.* Rather, he should be required to segregate the rescission damages from the benefit-of-the-bargain damages.

### i. Speculative damages

JTV seeks speculative damages that were not reasonably foreseeable at the time of contracting. In Tennessee, "[d]amages may never be based on mere conjecture or speculation." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 267 (Tenn. 2015). "[T]he evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages." *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012) (cite omitted). A plaintiff must offer "proof of damages within a reasonable degree of certainty." *Id.* "Thus, no recovery is available for loss of profits when it is uncertain whether any profits would have been made." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn. 2008), *overruled in other part by Rye*, 477 S.W.3d 235. Ohio follows the *Hadley v. Baxendale* rule in contract cases: consequential damages such as lost profits will only be awarded if they could reasonably "be supposed to have been contemplated by the parties as the probable result of such breach." *Williams v. Gray Guy Grp.*, L.L.C., 2016 WL 7493709, at *5 (Ohio App. 2016) (cite omitted).

Here, JTV seeks lost profits from delayed implementation of Sterling functionality and from delayed implementation of unrelated projects, years down the road. Bayley ¶123. The evidence will show that these damages are entirely speculative, were not reasonably foreseeable, and cannot be proved with reasonable certainty.

### ii. Unreliable damages

Sterling understands that the Court will not entertain *Daubert* motions, and it seeks merely to alert the Court that *Daubert*-type issues exist. Under Rule 702, an expert's testimony

must be "based on sufficient facts or data" and the expert must reliably apply reliable principles and methods to the facts of the case. Here, JTV's damages expert, Scott Bayley, has an opinion that is based on unsupportable, untested assumptions that do not constitute "sufficient facts or data." Even when testifying based on hypothetical premises, an expert must have confidence in the plausibility of these premises. Bayley made a number of assumptions that have little basis in reality. Nor has he correctly applied reliable principles and methods to that data. He failed to apply generally accepted practices and methodologies for determining damages in developing his opinions. Calculations of damages need to be based on supportable assumptions and sufficient relevant and reliable evidence. There must be a causal connection between the alleged harmful act and the alleged damages. Bayley has not complied with professional standards and guidance issued by the AICPA, which contributes to the conclusion that his opinions have not been developed with a reasonable degree of certainty.

### iii. Noncontract damages

JTV seeks to recover damages for "the delay in functionality for shipping multiple orders together," also known as shipping consolidation. Bayley ¶106. But that functionality, while identified in the Business Case Sterling developed with JTV, was not included in the design documents (contemplated by the contracts) that JTV co-wrote and approved. Sterling was only obligated to implement functionalities described in the Solution Definition Documents. *See* D-001 at -448. Those documents, in turn, did not include shipping consolidation as a functionality to be implemented. As a consequence, Sterling was not required to implement shipment consolidation as part of the project. Therefore, JTV should not be able to present to the jury damages from the failure to implement shipment consolidation not required under the contracts.

### 3. Sterling will assert claims for JTV's breaches of the contracts

JTV failed to pay for Sterling's services, its expenses, and taxes under the contracts (*see, e.g.*, D-0028 §§ 2(a), 3(a); D-0234 §§ 2(a), 3(a)), for which Sterling is entitled to recover the amounts owing plus interest and attorney fees. These failures constitute breaches of six of the parties' contracts. Similarly, JTV's failure to cooperate to ensure a successful project and its breaches of the parties' agreements entitle Sterling to damages in an amount to be proven at trial. Under Ohio law, Sterling also is entitled to recover its attorney fees if it demonstrates that JTV breached the contracts in bad faith. *See McClure v. Fischer Attached Homes*, 889 N.E.2d 602, 610 (Ohio App. 2008).

### 4. Trial logistics issues: JTV should not be permitted to call a "corporate representative" witness

JTV intends to call an unnamed Sterling "corporate representative" to testify live about newly specified topics. Dkt. 702 at 17. This is not proper for several reasons.

- JTV disclosed no "corporate representative" witness on its Final Witness List. Dkt. 674. The Scheduling Order required the parties to disclose "a final witness list in accordance with Rule 26(a)(3)(A)(i)" by February 15. Dkt. 415 §1(c). The lists may be supplemented only with leave of court for good cause. *Id.*

- Rule 37(c)(1) prohibits undisclosed witnesses at trial, absent good cause. JTV says it made "an inadvertent error," Dkt. 702 at 16, which is not good cause.

- A party is not entitled to demand an opponent's "corporate rep" witness to testify live at trial. Rule 30(b)(6) applies to depositions, not trial. *See* Fed. R. Civ. P. 30(b)(6) ("a party may name as the *deponent* a public or private corporation" (emph. added)); *Stryker Corp. v. Ridgeway*, 2016 WL 6585007, at *2 (W.D. Mich. 2016) (collecting

Case 3:09-cv-00143-TRM-HBG   Document 704   Filed 04/19/17   Page 20 of 22   PageID #: 25108

cases). Rule 30(b)(6) "is inapplicable to the issue of witness testimony at trial."
*Roundtree v. Chase Bank USA, N.A.*, 2014 WL 2480259, at *1 (W.D. Wash. 2014).

- A trial witness's testimony is limited to matters within her personal knowledge. Fed. R. Civ. P. 602. Here, JTV seeks someone to testify to what Sterling, the company, knows. Her knowledge would be based, at least in part, on hearsay under Rule 802.

- Finally, for obvious reasons, Sterling would be prejudiced unfairly by an eve-of-trial requirement to prepare and present a corporate representative witness on new topics. JTV took no substantive 30(b)(6) deposition in discovery, and it cannot try to now.


Dated: April 19, 2017                     Respectfully submitted,

                                          s/ Joel D. Bush, II
                                          _____
Kyle Carpenter (BPR 005332)               Susan A. Cahoon, admitted *pro hac vice*
WOOLF MCCLANE BRIGHT                       Joel D. Bush, II, admitted *pro hac vice*
ALLEN AND CARPENTER PC                     KILPATRICK TOWNSEND & STOCKTON LLP
P.O. Box 900                              1100 Peachtree Street N.E., Suite 2800
Knoxville, Tennessee  37901               Atlanta, Georgia  30309-4528
Telephone:  (865) 215-1000                Telephone:  (404) 815-6500

                                          R. Paul Yetter, admitted *pro hac vice*
                                          Wynn B. McCloskey, admitted *pro hac vice*
                                          YETTER COLEMAN LLP
                                          909 Fannin, Suite 3600
                                          Houston, Texas  77010
                                          Telephone:  (713) 632-8000

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed this document and attached exhibits with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the following attorneys of record:

> David J. Shapiro
> Law Offices of David Shapiro
> 43 West 43rd Street, Suite 45
> New York, New York 10036
>
> Ed Shipe
> Wagner, Myers & Sanger, P.C.
> 800 S. Gay Street, Suite 1801
> Knoxville, Tennessee 37929
>
> Jim Wetwiska,
> Holli Pryor-Baze,
> Akin Gump Strauss Hauer & Feld LLP
> 1111 Louisiana Street, 44th Floor
> Houston, Texas 77002

This 19th day of April, 2017.

> s/ Joel D. Bush, II
> _____
> Joel D. Bush, II
> Admitted *pro hac vice*