IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., d/b/a JEWELRY TELEVISION®, | ) ) ) ) |
| Plaintiff, | ) Civil Action No.: 3:09-CV-143 ) McDonough/Guyton ) |
| v. | ) ) |
| STERLING COMMERCE (AMERICA), INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S TRIAL BRIEF**
**(Trial Date: May 9, 2017)**

Plaintiff America's Collectibles Network, Inc. d/b/a Jewelry Television® ("Plaintiff" or "JTV") respectfully submits this trial brief in accordance with this Court's Order on Final Pretrial Conference (Doc. 415). With the exception of Sterling's ability to defend and prosecute in this action, JTV does not currently anticipate legal issues arising during trial because (1) outstanding legal issues were resolved by the Court on summary judgment and were fully briefed in relation to those motions[1] and (2) issues related to the parties' claims and affirmative defenses are fact issues, upon proper evidentiary proof at trial, for the jury's consideration. JTV provides this Trial Brief as context for issues that might arise during trial and to respond to certain assertions by Sterling in the Pretrial Order.

Other issues may arise at the Jury Charge Conference, upon which time JTV will provide briefing.

---

[1] JTV incorporates by reference those briefs rather than burden the record with additional papers.

Further, JTV reserves the right to respond to Sterling's Trial Brief and to submit supplemental briefing of legal and evidentiary issues as such issues arise during trial.

## I. INTRODUCTION

Overwhelming evidence establishes that between 2006 and 2007, Sterling fraudulently induced JTV into paying Sterling millions of dollars for Sterling's software systems ("Solution")[2] and software implementation services. Sterling's own documents and witnesses confirm that before it licensed its products and sold its services to JTV, Sterling knew that it had never before implemented this Solution; and that its separate systems could not fully communicate with each other (i.e., they were not "interoperable"), could not easily integrate with JTV's legacy system, and lacked capabilities and functionality critical to running JTV's business processes—yet Sterling falsely assured JTV just the opposite, and did so repeatedly. Likewise, Sterling knew that it did not have available qualified resources to do the job and that it had no experience in implementing a similar solution—yet Sterling assured JTV just the opposite. JTV's witnesses will each testify that Sterling induced JTV into the parties' contracts by making multiple misrepresentations of material facts about Sterling's implementation experience and the quality and nature of Sterling's Solution and services, available resources and experience. Examples of Sterling's misrepresentations are set forth in the parties' Joint Pretrial Order (Doc. 702, pp. 5-9, ¶¶ 1–32).

After two years, many millions of dollars, and millions of dollar of employee and consultant time, and a go-live of only a small subset of Sterling's products, JTV learned that Sterling's pre-contract representations were false and that Sterling knew they were false.

---

[2] The parties' Implementation Statement of Work defines Solution as "Sterling Commerce software licensed by [JTV] [including] Distributed Order Management [OMS], Supply Collaboration [PO] . . . [and] Warehouse Management [WMS]."

2

Sterling failed to meet its obligations under the parties' contracts and breached the warranties made to JTV about the Solution and its services. At Go-Live, Sterling failed to deliver a functioning Solution that met JTV's business requirements and left JTV to recover from the Solution deficiencies on its own. Sterling abandoned the project, refused to return to JTV without additional and significant consideration, and denied all wrongdoing. It was not until this litigation that JTV learned Sterling knew it could not implement all three systems simultaneously, could not deliver out of the box functionality, did not have available qualified and experienced resources, did not have experience in implementing a similar solution, and could not configure a system to run JTV's business on time and on budget. Examples of Sterling's numerous contract breaches are set forth in the parties' Joint Pretrial Order (Doc. 702, pp. 9-11, ¶¶ 1–12).

JTV believes that the jury will find for JTV on its claims of fraudulent inducement, promissory fraud, negligent misrepresentations, breach of express warranties, and breach of the parties' contracts. JTV will present numerous witnesses and documents demonstrating Sterling's fraudulent representations and omissions inducing JTV into the parties' contracts and continued fraud during the course of its work at JTV. The story of Sterling's fraud is told through Sterling's internal emails. Expert witness Thomas Ryan examined the evidence in this case and will testify that Sterling, not JTV, was the cause of the multiple project failures. Sterling knowingly made numerous misrepresentations about its implementation experience, the functionality of its software and the quality of its services that were false, and subsequently failed to properly design, configure, and deploy the Solution to JTV. Software code expert Zaydoon Jawadi will testify that Sterling's Solution was not interoperable, meaning that the Sterling systems could not talk to each other in order to exchange crucial business information,

and not seamlessly integrateable into JTV's legacy system. The end result was the partial and temporary implementation of a small portion of the promised Solution, with significant missing functionality, and causing more issues than it solved.

JTV's damages are based on a "Business Case" created by Sterling, that is conservative, and fully supported by fact and expert testimony. JTV fact witnesses and expert economist Scott Bayley will testify that JTV incurred damages of some $65 million, including the following components: (1) payments to Sterling and third party vendors, totaling $ 7,103,076; (2) internal IT resources, totaling $3,048,536; (3) mitigation costs to ameliorate the Go-Live problems, totaling $ 3,716,844; (4) delay in business efficiencies, pursuant to the Sterling Business Case, totaling between $42,793,134 and $50,303,293. JTV also seeks punitive damages and prejudgment interest.

Sterling, on the other hand, cannot succeed on its claims against JTV or on its affirmative defenses—JTV fully complied with its contractual obligations, does not owe ongoing maintenance fees, did not know about Sterling's fraud and did not waive Sterling's performance under the parties' contracts, and has not acted in a manner negating enforcement of Sterling's compliance with the contracts. Moreover, as a dissolved and canceled Delaware corporation, "Sterling" does not have the authority to assert counterclaims against a Tennessee corporation.

## II. THE PARTIES' AGREEMENTS

The parties executed multiple agreements (together referred to herein as the "Agreements") for the licensing, design, configuration, and implementation of Sterling's Solution. JTV alleges that Sterling breached these Agreements in whole by failing to properly design, configure, and deliver a functioning Solution on time and on budget that met JTV's business requirements. The Agreements include:

1. The Universal Software License Agreement, dated December 22, 2006.

4

2. Schedule No. 1 License (nWMS), dated December 22, 2006.

3. Schedule No. 2 License (OMS and PO), dated June 1, 2007.

4. The Professional Services Agreement, dated April 26, 2007.

5. The Pre-Project Planning Statement of Work, dated April 19, 2007 and signed by JTV on April 24, 2007; and the Change Request Form to the Pre-Project Planning Statement of Work, signed by JTV on May 18, 2007 and by Sterling on June 5, 2007, and dated May 4, 2007.

6. The Education Services Letter Agreement, dated June 14, 2007.

7. The Solution Definition Statement of Work, dated June 21, 2007; the Change Request Form 1 to the Solution Definition Statement of Work, dated September 13, 2007; and the Change Request Form 2 to the Solution Definition Statement of Work, dated September 20, 2007.

8. The Implementation Phase Statement of Work, dated October 5, 2007.

### III. PLAINTIFF'S CAUSES OF ACTION

As stated above, JTV does not anticipate significant legal issues with regard to the parties' claims and affirmative defenses. Contrary to Sterling's assertions in the Joint Pretrial Order, the Court addressed outstanding legal issues in its Memorandum Opinion on Summary Judgment (Doc. 419).

### A. Claims 1 and 2: Fraudulent Inducement and Promissory Fraud

#### 1. Elements of Claims

JTV will demonstrate to the jury that Sterling committed two types of fraud: fraudulent inducement and promissory fraud.

To recover for fraudulent inducement, JTV will establish the following elements: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; and (5) an injury

5

resulting from the reliance.[3] Similar elements are required to demonstrate fraudulent concealment:[4] (1) Sterling concealed or suppressed a material fact; (2) Sterling was under a duty to disclose the fact to JTV; (3) Sterling intentionally concealed or suppressed the fact with the intent to deceive JTV; (4) JTV was not aware of the fact and would have acted differently if JTV knew of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, JTV sustained damage. Sterling had a duty to disclose material facts to JTV if Sterling knew of material facts and also knew that those facts were neither known nor readily accessible to JTV.[5]

Further, JTV will show that Sterling committed promissory fraud by showing the following elements: (1) Sterling made a promise as to a material matter to JTV; (2) at the time the promise was made, Sterling did not intend to perform it; (3) Sterling made the promise with an intent to deceive—in other words, Sterling made the promise to induce JTV to rely upon it and to act or not act in reliance upon it; (4) JTV was unaware that Sterling did not intend to perform the promise; (5) JTV acted in reliance upon the promise and was justified in relying upon the promise made by Sterling; and (6) as a result of the reliance upon Sterling's promise,

---

[3] *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011); *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630–31 (Tenn. Ct. App. 2000).

[4] *See Leeper v. Cook*, 688 S.W.2d 94, 96 (Tenn. 1985) (fraud by concealment requires withholding information that was asked for, or making use of some device to mislead, and necessitates that the person withholding is required by duty to disclose the known information); *Goodall v. Akers*, No. M2008-01608-COA-R3-CV, 2009 Tenn. App. LEXIS 294, at *22 (Tenn. Ct. App. Mar. 3, 2009) (noting that Tennessee courts have identified three categories of cases in which a duty to disclose arises: (1) where there is a definite fiduciary relationship between the parties; (2) where "it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other"; and (3) where "the contract or transaction is intrinsically fiduciary and calls for perfect good faith") (citing *Macon Cty. Livestock Mkt., Inc. v. Ky. State Bank, Inc*., 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986)).

[5] *See Leeper*, 688 S.W.2d at 96.

JTV has sustained damage.[6] In sum, Sterling made false promise of future action without any present intention to carry out the promise.[7]

JTV will demonstrate Sterling's fraudulent intent by showing that Sterling knew its misrepresentations were false and/or impossible[8] and bringing forth evidence of Sterling's conduct before and after the promise was made to enable the jury to deduce from the facts and circumstances surrounding the agreements.[9] JTV will demonstrate, among other fraudulent acts, that Sterling intentionally created the false impressions of its ability to design, configure, and implement the Solution to meet JTV's business needs, the false impression of itself as an established software company with extensive experience and resources, and the false impression that its products were capable of handling functions well outside their actual abilities. Sterling's misrepresentations, including those that may be deemed opinions, are actionable considering they were made in the context of Sterling's pitch to JTV and during the implementation at JTV.[10] These are actionable misrepresentations to support JTV's fraud claim.[11]

---

[6] *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990); *see also Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989); *Daly v. Wacker-Chemie AG*, No. 1:13-cv-382, 2014 U.S. Dist. LEXIS 105336, at *29–30 (E.D. Tenn. Aug. 1, 2014).

[7] *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998); *Stacks*, 812 S.W.2d at 592; *see also Keith*, 780 S.W.2d at 754.

[8] *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499–500 n.3 (Tenn. 1978) ("The intention may be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise.") (quoting RESTATEMENT (SECOND) OF TORTS § 530, Comment (d) (1977)).

[9] *See Katzenberger v. Leedom & Co.*, 52 S.W. 35, 37 (Tenn. 1899).

[10] *See City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 674 (6th Cir. 2005) (reasoning that, depending on the context, opinions or puffery may be actionable).

[11] *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 132–33 (Tenn. Ct. App. 1982) (fraudulently or intentionally creating impressions meant to mislead may give rise to liability); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 589 (Tenn. Ct. App. 1980) (falsely "convey[ing] the impression that [defendant] was a large company with extensive resources at

7

As set forth in the Pretrial Order, Sterling's misrepresentations include, among others:

- Sterling's nWMS, OMS and PO software was a good fit for JTV.
- Sterling's proposed Solution (i.e., the implementation of nWMS, OMS and PO) for JTV was a good fit for JTV.
- OMS, PO and nWMS, without significant modifications, could run JTV's business.
- Sterling's proposed Solution for JTV, without significant modifications, could run JTV's business.
- Sterling had sufficient knowledge, experience and expertise to understand JTV's unique business requirements and to implement a successful, on-time and on-budget project.
- OMS, PO and nWMS, without significant modifications, could provide the specific functionalities set forth in Exhibit B to the Initial Expert Report of Tom Ryan.
- Sterling's nWMS, OMS and PO were "highly interoperable," the modules could "seamlessly integrate" with JTV's legacy system and "extensibility" was straightforward, all consistent with a "packaged" solution.
- Sterling's nWMS, OMS and PO modules and the Yantra Platform were "integrated," "pre-integrated," "coherently integrated," and the modules would "all work together."
- Sterling's products were based on an advanced Service-Oriented Architecture which would, among other things, not require a great deal of work by JTV to make procedures, data exchange and seamless functionality occur.
- Sterling misrepresented its ability to implement all three parts of its "solution" (nWMS, OMS and PO) in approximately the same timeframe as it could implement nWMS alone.
- Sterling falsely represented that it had the products, capability and resources to implement a fully designed and developed Solution at JTV for approximately $2 million that conforms to JTV's business practices and processes and which is technically feasible within the framework of JTV's hardware and software systems with a 'go live' of April 15, 2008 but, in any event, no later than June 15, 2008.
- Sterling misrepresented the degree and complexity of interfaces required for the project.

---

hand for the promotion and distribution of its records" supported a claim for fraudulent inducement); *accord Warren v. Wheeler*, 566 N.E.2d 1096, 1100 (Ind. Ct. App. 1991) (falsely inflating client numbers were statements of existing fact sufficient to support fraud).

8

- Sterling misrepresented the amount of work that JTV would have to do to make the project a success.

- Sterling failed to disclose that nWMS was an immature product.

- Following the Solution Design phase, Sterling misrepresented the status of the project, that it was ready to proceed to implementation, and that Sterling was ready, willing and able to achieve a successful, on time and on budget implementation.

- Sterling failed to disclose the significant problems with the nWMS product and code that was bringing QVC to its knees.

- Sterling failed to disclose that the OMS SDD, as delivered by Sterling, was "garbage" and "just JTV's wish lists with very little thought into how we (Sterling) meet the (JTV) requirements."

- Sterling falsely represented that its products had "out-of-the-box" functionality that was essential to running JTV's business.

- Sterling had available staff and outside consultants with the necessary experience and skill set to seamlessly implement nWMS, OMS and PO on time and on budget, including a large global delivery center of over 600 employees that it could pull from; and Sterling's "highly skilled resources, products and services" would allow for a single source provider to meet JTV's needs.

- Sterling Commerce "[had expertise] in its software, . . . experience in implementing similar solutions in other companies, and . . . ability to customize the Sterling Commerce software to meet the requirements as defined in the Solution Definition document."

- Sterling had successfully implemented nWMS, OMS and PO together (i.e., simultaneously and in parallel) at other companies.

- The Solution could be implemented in 6 months and 10 days but, in any event "no later than June 15, 2008" (i.e., within 8 months and 10 days).

- "The estimated amount budgeted for the implementation of the Sterling Commerce Solutions for WMS, OMS and PO . . . and the Services to be provided by Sterling Commerce [approximately $2 million], will be sufficient to enable the Solutions to be fully designed, developed and implemented at [JTV]."

- There would be no adverse effect on the resources Sterling will devote to JTV's project if JTV licenses OMS and PO, and Sterling will "Ensure the right resources are available to meet [JTV's] Demand."

- Sterling would provide "consistent project leadership, architecture expertise and business/systems analysis" and "Consistency of Resources."

- Sterling had the personnel available for critical on-site work at JTV to evaluate, design, and implement the project on Sterling's behalf.

9

- Sterling had access to outside consultants of sufficient competence, experience and expertise to complete the project successfully.
- Sterling had the technical expertise on-site to evaluate JTV's systems and design a "solution" that would meet JTV's "end to end" needs.
- Sterling had the ability to write requirements into a "solution definition document" sufficient to allow implementation to be successful, on-time and on-budget.
- Sterling was skilled in blending its project planning and implementation methodology of "Rapid Returns" with JTV's agile processes, and employed "field tested best practices" in managing projects.
- Sterling would "Assign the Sterling Commerce resources necessary for a successful project"; and "Ensure deliverables are completed on time."
- Sterling would provide a Solution Architect who "ensures the overall quality of the design and implementation" and he, she or they will, among other things "Provide product and technical expertise" and "Quality control the implementation."

2. <u>Anticipated Legal Issue at Trial</u>

As an initial matter, in the Joint Pretrial Order, Sterling claims that its affirmative defenses are matters of law for the Court to decide.[12] This is incorrect. Sterling's affirmative defenses of waiver, estoppel, and ratification are potential questions of fact for the jury if Sterling meets its evidentiary burden of proof at trial. Other issues may arise at the Jury Charge Conference, upon which time JTV will provide appropriate briefing.

Sterling also asserts that "whether as a matter of law the Limitation of Liability provisions in the Universal Software License Agreement and Professional Services Agreement limit any recovery by JTV."[13] The Court held at summary judgment that (1) warranty disclaimers and clauses limiting liability do not apply to restrict Tennessee fraud claims[14] and (2) the clauses will not operate to limit damages if a jury finds the defendant liable for fraud and/or

---

[12] Doc. 702, Joint Pretrial Order, pp. 14–15, ¶¶ 1–18.

[13] Doc. 702, Joint Pretrial Order, p. 14, ¶ 4.

[14] *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006); *Agristor Leasing v. Saylor,* 803 F.2d 1401, 1407 (6th Cir. 1986).

10

misrepresentation.[15]  Pursuant to this ruling, JTV agrees that the application of the warranty disclaimers and the limitation of liability provisions are questions of law for the Court.  The limitation of liability provision should not be presented to the jury as it is overly prejudicial, misleading, and confusing to the jury's consideration of the issues.

In this litigation, Sterling has asserted that certain of JTV's asserted misrepresentations are merely "sales talk" and not actionable misrepresentations.  "Puffing" or "sales talk" refers to "loose general statements made by sellers in commending their products" that essentially embody "exaggerations, the truth or falsity of which cannot be determined easily . . . ."[16]  Conversely, misrepresentations of material fact concerning the character or quality of a product or services are actionable.[17]  In the Joint Pretrial Order, Sterling asserts that this is a matter of law for the Court.[18]  Contrary to Sterling's assertion, the Court previously denied summary judgment on this claim, and the questions are now fact issues for the jury.  Tennessee courts prefer to leave the question of whether a statement amounts to an actionable misrepresentation to the jury.[19]

---

[15] Doc. 419, pp 42–43.

[16] *See Daugherty v. Sony Elecs., Inc.*, No. E2004-02627-COA-R3-CV, 2006 Tenn. App. LEXIS 53, at *26–27 (Tenn. Ct. App. Jan. 26, 2006) (quoting *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 100 (Tenn. Ct. App. 1996) (noting that characterizing an automobile as "dandy" or a "good little car" would not constitute an actionable misrepresentation).

[17] *Id.*

[18] Doc. 702, Joint Pretrial Order, p. 14, ¶¶ 9–10 (asserting that "[w]hether as a matter of law any representation upon which JTV seeks to recover is a generic statement of quality or ability" and "[w]hether as a matter of law any representation upon which JTV seek[s] to recover is sales talk or puffery.")

[19] *See Daugherty*, 2006 Tenn. App. LEXIS 53, at *26–27 (finding that the trial court erred in dismissing plaintiff's claim on the ground that defendant's advertisements amounted to puffing as a matter of law).

JTV will demonstrate to the jury that Sterling's misrepresentations are actionable and rise above puffery. Sterling's numerous misrepresentations as to the capabilities of its software and implementation resources stretch far beyond mere sales talk, especially considering the context of the misrepresentations.[20] Sterling targeted JTV with misrepresentations that, when considered together and in relation to one another, induced JTV's reliance on Sterling's promise to deliver a fully functional software system that would fit JTV's business needs.[21] Sterling was familiar with its software and with JTV's needs; thus, statements about whether the software can meet those needs are actionable.[22] Accordingly, even if some of Sterling's representations constitute opinions, or puffery for that matter, the representations are actionable due to the context in which they were made.[23]

### B.  Claim #3: Negligent Misrepresentation

#### 1.  Legal Elements of Claim

To establish Sterling's negligent misrepresentations, JTV will demonstrate that: (1) Sterling was acting in the course of its business, profession, or employment; (2) Sterling supplied false information for the guidance of others in its business transactions; (3) Sterling failed to exercise reasonable care in obtaining or communicating the information; and (4) JTV justifiably

---

[20] *See City of Monroe*, 399 F.3d at 672 (reasoning that defendant's statement that objective data indicated its tires were safe constituted an actionable misrepresentation when considering the statement's context—numerous lawsuits had recently been filed over the tires and several safety groups sought a recall of the tires).

[21] *See id.* (noting that statements cannot be assessed in a vacuum when determining whether they constitute actionable misrepresentations).

[22] *See Dunn Appraisal Co. v. Honeywell Information Systems, Inc.*, 687 F.2d 877, 882 (6th Cir. 1982) ("General representations that data processing equipment will be suitable for a customer's operations, based upon familiarity with both the equipment's capabilities and the customer's needs, are statements concerning present facts.").

[23] *See City of Monroe*, 399 F.3d at 674 (citing example where corporate board members' statements to minority shareholders as to the "high value" of stock purchase price constituted actionable representations).

relied on the information.[24] Negligent misrepresentation also requires a statement of existing or past material fact.[25] JTV will establish that Sterling failed to exercise reasonable care or competence in obtaining information about the business transaction and/or that Sterling failed to exercise reasonable care or competence in communicating that information.[26]

### 2. Anticipated Legal Issue at Trial

In the Joint Pretrial Order, Sterling asserts that "whether as a matter of law JTV's claim for negligent misrepresentation is barred by ratification, waiver, or equitable estoppel."[27] It is JTV's position that these affirmative defenses are potential fact issues for the jury if Sterling meets its evidentiary burden at trial and that there are no outstanding legal issues with regard to this cause of action. Other issues may arise at the Jury Charge Conference, upon which time JTV will provide appropriate briefing.

### C. Claim #4: Breach of Express Warranty

#### 1. Legal Elements of Claim

The Court has previously addressed pending legal questions with regard to JTV's breach of warranty claim by granting summary judgment on JTV's implied warranty claim due to implied warranty disclaimer provisions. What remains is JTV's express warranty claim under the parties' Implementation Phase Statement of Work, Schedule No. 1 License Agreement, and Schedule No. 2 License Agreement. Under the Implementation SOW, JTV will show that Sterling breached express warranties to complete the Project within the estimated budget and an implied warranty as to the quality of performance. (Doc. 32, ¶¶ 162–63). JTV will also show

---

[24] *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (citations omitted).

[25] *McElroy*, 632 S.W.2d at 130.

[26] *See, e.g.*, *Robinson*, 952 S.W.2d at 427 (collecting cases relating to negligent supply of information in the course of a commercial or business transaction).

[27] Doc. 702, Joint Pretrial Order, p. 15, ¶ 18.

that Sterling breached the License Agreements by providing JTV with defective software. (Doc. 32, ¶¶ 167–68, 170). Under Ohio law, a warranty is an express promise that a proposition of fact is true, or that something in furtherance of a contract is guaranteed.[28] An affirmation of fact or a promise by Sterling that its software or services possess certain characteristics is a warranty.[29]

### 2. Anticipated Legal Issue at Trial

Because the Court previously ruled on issues related to JTV's warranty claims, JTV does not anticipate any legal issues with regard to this cause of action during the trial. Issues may arise at the Jury Charge Conference, upon which time JTV will provide appropriate briefing.

### D. Claim #5: Breach of Contract

#### 1. Legal Elements of the Claim

JTV alleges that Sterling committed numerous breaches of the parties' Agreements. To demonstrate breach, JTV must prove: (1) the parties entered into a contract; (2) Sterling breached the contract; and (3) JTV was not in material breach of the contract or had substantially performed its duties under the contract at the time of Sterling's breach.[30] This claim is governed by Ohio law. The evidence will demonstrate that Sterling failed to perform its duties under the Agreements, and that JTV was both not in material breach, which is a breach that violates a term essential to the purpose of the contract and substantially performed its obligations.

As set forth in the parties' Pretrial Order, the following are examples of Sterling's breaches of the Agreements:

---

[28] *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371, 378, 743 N.E.2d 984 (Ohio Ct. App. 2000) (quoting BLACK'S LAW DICTIONARY 1586 (6th Ed.1990)); *Wee Care Child Ctr., Inc. v. Ohio Dep't of Job & Family Servs.*, 2014 Ohio 2913, ¶ 37, 2014 Ohio App. LEXIS 2853 (Ohio Ct. App. 2014) (quoting BLACK'S LAW DICTIONARY 1581 (7th Ed.1999)); *Wagner v. Roche Laboratories*, 85 Ohio St. 3d 457, 459, 709 N.E.2d 162 (1999).

[29] *See id.*

[30] *Thomas v. Publishers Clearing House*, 29 Fed. Appx. 319, 322 (6th Cir. 2002).

- Failure to perform services in a professional and workmanlike manner in breach of Section 8(a) of the Professional Services Agreement;

- Failure to properly and timely prepare and deliver Sterling deliverables, including a functional fit analysis in breach of Section G of the Pre- Project Planning Statement of Work, Change Request Form 001; a Solution Definition audit in breach of Sections A(22) and C(3) of the Solution Definition Phase Statement of Work; detailed design plans for Sterling custom extensions as identified in Section A(3) of the Implementation Phase Statement of Work;  Build & Test audit, Performance Results Audit and a Go-Live Readiness report in breach of Section A(12) of the Implementation Phase Statement of Work;

- Failure to properly design, configure, build, test and deploy the OMS, nWMS, and PO Solution based on Solution Definition Documents in breach of Section A of the Implementation Phase Statement of Work;

- Failure to deliver complete and accurate Detailed Design documentation for the OMS, nWMS, and PO Solution in breach of Section C of the Implementation Phase Statement of Work;

- Failure to deliver the OMS, nWMS, and PO Solution, per the Solution Definition Documents, unit-tested and ready for system, performance and user acceptance tests in breach of Section C of the Implementation Phase Statement of Work;

- Failure to implement a fully designed and developed nWMS, OMS, and PO Solution for the amount estimated by Sterling in breach of Section H of the Implementation Phase Statement of Work;

- Failure to provide personnel in conformance with project needs and as outlined in Section F of the Implementation Phase Statement of Work;

- Failure to design, develop, and implement the nWMS, OMS, and PO Solution to conform to JTV's business practices and processes, as reflected in the Solution Definition Document, in breach of Section H of the Implementation Phase Statement of Work; and

- Failure to complete all design, development and testing of the Solution so that the Solution was ready to go live within budget by April 15, 2008 and no later than June 15, 2008 in breach of Section H of the Implementation Phase Statement of Work.

15

### 2. Anticipated Legal Issue at Trial

As an initial matter, Sterling asserts in the Joint Pretrial Order that its affirmative defenses are a matter of law for the Court.[31] JTV disagrees and responds that Sterling's affirmative defenses are potential questions of fact for the jury if Sterling meets its evidentiary burden at trial. Other issues may arise at the Jury Charge Conference, upon which time JTV will provide appropriate briefing.

### E. **Compensatory Damages Sought By JTV**

JTV seeks two types of compensatory damages: (1) expectancy or benefit of the bargain and (2) reliance or out-of-pocket costs. For Sterling's misrepresentations, concealment, breach of contract, and breach of warranty, JTV is entitled to recover benefit of the bargain damages, which measures the difference between the actual value of what JTV received and the value of what JTV would have received had (a) the misrepresentation by Sterling had been true and/or (b) the contract had been fully performed by Sterling. This amount also includes any pecuniary losses suffered by JTV, including any costs or expenses that were incurred by JTV and JTV's loss of profits as a result of Sterling's misconduct.[32]

For breach of contract and breach of warranty, JTV is entitled to recover the amount of damages necessary to place him/her in the same position as if the contract had not been made.

---

[31] *See, e.g.*, Doc. 702, Joint Pretrial Order, p. 15, ¶¶ 11, 13.

[32] *Boling v. Tennessee State Bank*, 890 S.W.2d 32, 35–36 (Tenn. 1994) (quoting RESTATEMENT (SECOND) OF TORTS § 549 (1977) and upholding award of plaintiff's costs in misrepresentation claim); *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (same); *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925 (Tenn. 1991) (upholding award of lost profits in misrepresentation claim); *Longo Constr. Inc. v. ASAP Tech. Servs., Inc.*, 140 Ohio App. 3d 665, 669, 748 N.E.2d 1164 (8th Dist. 2000) (noting proper measure of damages in breach of contract case under Ohio law as expectation damages).

These damages include out-of-pocket expenditures made in preparation for performance or in performance of the contract.[33]

JTV will present evidence to establish that JTV's damages include, but are not limited to, the following components: (1) payments to Sterling and third party vendors, totaling $ 7,103,076; (2) costs of internal IT resources, totaling $ 3,048,536; (3) mitigation costs to ameliorate the Go Live problems, totaling $ 3,716,844; and (4) delay in business efficiencies, pursuant to the Sterling Business Case, totaling between $42,793,134 and $50,303,293.

In the Joint Pretrial Order, Sterling asserts that there is a legal question "whether JTV's damages are legally recoverable, including whether its claim for lost cost savings is a recoverable category of lost profits."[34] This appears to be a semantics challenge as to the characterization of JTV's damages by JTV's expert witness Scott Bayley. At trial, the jury will consider JTV's damages after full presentation of its evidence in support of its damages model.

### F.     Punitive Damages Sought by JTV

JTV will present to the jury clear and convincing evidence that Sterling acted intentionally, recklessly, maliciously, and fraudulently. The jury will be instructed on the *Hodges*[35] factors in their assessment of punitive damages.

Other than the issues addressed in Sterling's Motion in Limine No. 1 regarding the introduction of evidence concerning IBM's net worth, JTV does not anticipate other legal issues in relation to the jury's assessment of punitive damages for Sterling's wrongful conduct.

---

[33] *Alts. Unlimited-Special, Inc. v. Ohio Dep't of Educ.*, 2013 Ohio 3890, ¶ 31, 2013 Ohio App. LEXIS 4064 (Ohio Ct. App. 2013).

[34] Doc. 702, Joint Pretrial Order, p. 15, ¶ 15.

[35] *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901–02 (Tenn. 1992).

### G. Legal Capacity of Sterling to Prosecute and Defend this Action

There is an outstanding legal issue as to whether Sterling can defend and prosecute this lawsuit. Sterling, who converted to Sterling Commerce (America), LLC in 2011, filed its certificate of cancellation in Ohio on or about April 11, 2014, and in Delaware on or about June 15, 2015. Sterling did not disclose to the Court its conversion or cancellation as required by Federal Rule of Civil Procedure 7.1. Under Delaware law, a cancelled LLC cannot defend and prosecute its claims. JTV only learned of this undisclosed activity as it was preparing a response to Sterling's Motions in Limine.

### III. EVIDENTIARY ISSUES

JTV anticipates few evidentiary issues at trial. The parties previously entered into a Joint Stipulation (Doc. 223) on the admissibility of documents that resolves any potential authentication and hearsay objections. Specifically, the parties agreed that:

- All documents[36] produced by Parties and non-parties in response to a subpoena "shall be deemed authentic, true and correct by the Parties for the purposes of depositions, trial or hearings and shall constitute an accurate and true reproduction of the document each purports to be."

- All documents produced by the parties fall within the business records exception to the federal hearsay rules.

The parties reserved the right to object on other grounds (e.g., relevance) to the introduction of documents governed by the Joint Stipulation as evidence at trial or hearings.

JTV anticipates calling Sterling corporate representative with knowledge of certain topics to testify as the Defendant at trial. These topics include: (1) the representations made to JTV with regard to the software and Sterling's implementation and services; (2) the business case prepared under the pre-planning phase; (3) the identification and description of other Sterling

---

[36] This includes but not limited to contracts, PowerPoint presentations, excel spreadsheets, invoices, e-mails and attachments to emails.

18

customers for which Sterling implemented nWMS, PO and OMS prior to or simultaneous to the JTV project; (4) the net worth of IBM, the successor to Sterling; and (5) interoperability of nWMS, OMS and PO as of June 1, 2007, including all tests of interoperability. Sterling has objected to JTV's ability to call this witness, and JTV will address this issue when raised to the Court.

Sterling raised certain evidentiary issues in its Motions in Limine, and JTV has served its response to these issues. Sterling has also lodged objections to many of JTV's exhibits, including its own interrogatory responses, and Sterling has responded to these objections. The Court will consider these issues at Pretrial Conference on April 24, 2017.

Respectfully submitted this 19th day of April, 2017.

| | |
|---|---|
| */s/ David J. Shapiro* | */s/ Edward W. Shipe* |
| David J. Shapiro (DS8639) | W. Edward Shipe, BPR #23887 |
| THE LAW OFFICES OF DAVID J. SHAPIRO, P.C. | WAGNER, MYERS & SANGER, P.C. |
| 43 West 43rd Street, Suite 45 | 800 S. Gay Street, Suite 1801 |
| New York, NY 10036 | Knoxville, TN 37929 |
| 212-709-8047 (Telephone) | 865.525.4600 (Telephone) |
| 917-210-3236 (Facsimile) | 865.291.0419 (Facsimile) |
| dshapiro@shapirojuris.com | eshipe@wmspc.com |
| | |
| *Counsel for Plaintiff America's Collectibles, Inc., d/b/a Jewelry Television®* | *Counsel for Plaintiff America's Collectibles, Inc., d/b/a Jewelry Television®* |

*/s/Jim Wetwiska*
Jim Wetwiska, admitted *pro hac vice*
Holli Pryor-Baze, admitted *pro hac vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
713-220-5899 (Telephone)
713-236-0822 (Facsimile)
jwetwiska@akingump.com
hpryorbaze@akingump.com

*Counsel for Plaintiff America's Collectibles, Inc.,
d/b/a Jewelry Television®*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2017, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to Defendant as indicated on the electronic filing receipt. There is no other party in this action that requires service. Sterling may access the filing through the Court's electronic filing system.

/s/ Holli Pryor-Baze
Holli Pryor-Baze