# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., d/b/a JEWELRY TELEVISION, | ) ) ) | Case No. 3:09-cv-143 |
| | ) | Judge Travis R. McDonough |
| *Plaintiff,* | ) ) | Magistrate Judge H. Bruce Guyton |
| v. | ) ) | |
| STERLING COMMERCE (AMERICA), INC., | ) ) ) | |
| *Defendant.* | ) ) | |

## MEMORANDUM OPINION

The United States Court of Appeals for the Sixth Circuit vacated this Court's prejudgment-interest award and remanded the case for further proceedings as to prejudgment interest. (Doc. 916, at 6.)

## I.    BACKGROUND

This case lives on, now ten years old, after many delays. Although the parties requested and agreed to some of the delays, the Court's own inaction accounts for most of the elapsed time. Previously, the Court awarded prejudgment interest equitably discounted by the impact of the Court's periods of dormancy. On remand, the Court must determine what effect, if any, its delays should have on the appropriate prejudgment-interest award.

Plaintiff America's Collectibles Network Inc., d/b/a Jewelry Television ("JTV") initiated this action on April 3, 2009 (Doc. 1), and filed an amended complaint on June 29, 2009 (Doc. 16). Defendant Sterling Commerce (America), Inc. ("Sterling"), filed a motion to dismiss JTV's

complaint on July 22, 2009. (Doc. 18.) After the parties briefed the motion to dismiss, JTV moved to file a second amended complaint, which the Court allowed. (*See* Docs. 27, 31.) Sterling moved to dismiss JTV's second amended complaint on December 7, 2009. (Doc. 33.) On May 26, 2011—approximately seventeen months after Sterling filed its motion to dismiss JTV's second amended complaint—the Court entered its order denying Sterling's motion to dismiss. (Docs. 52, 53.)

Seven months later, the Court entered the first scheduling order in December 2011— thirty-two months into the litigation. (Doc. 65.) That scheduling order set a trial date of August 5, 2013. (*Id.*) In August 2012, however, the Court granted the parties' motion to extend deadlines and reset trial for February 10, 2014. (Doc. 86.)

On September 12, 2012, JTV filed a motion for partial summary judgment. (Doc. 87.) While that motion was pending, the parties again filed a joint motion for extension of time to complete discovery and to extend pretrial deadlines. (Doc. 144.) The Court granted the parties' motion and reset the trial for October 27, 2014, but warned that "in light of the potentially substantial record that will likely be filed with multiple motions for summary judgment, the trial date is subject to revision by the court as may be necessary to adequately address such motions." (Doc. 153.) The Court's order also provided that fact discovery would close on December 31, 2014, approximately two months after the trial date. (*See* Doc. 144, at 5; Doc. 153.)

On January 22, 2014, the parties filed a motion for a stipulated briefing schedule regarding dispositive motions. (Doc. 225.) In its order granting the parties' motion, the Court reset the trial for March 24, 2015. (Doc. 227.) On February 5, 2014, JTV filed a motion to amend the Court's scheduling order and to reopen limited discovery. (Doc. 229.) On February 7, 2014, the Court entered an order staying the deadlines for filing dispositive motions pending

its ruling on JTV's motion to reopen limited discovery.  (Doc. 236.)  Two weeks later, the Court amended the scheduling order and reopened limited discovery.  (Doc. 245.)

On June 20, 2014, Sterling filed its motion for summary judgment.  (Doc. 258.)  Briefing was complete on October 2, 2014.  (Docs. 316, 342.)  Later that month, the Court ordered the parties to mediation, cancelled the March 2015 trial date, and stayed the case pending mediation. (Doc. 346.)  The mediation failed, and on March 2, 2015, the Court lifted the stay and reset trial for August 26, 2016.  (Doc. 365.)

On March 14, 2016, more than a year later and almost two years after Sterling filed its motion for summary judgment, the presiding judge recused himself from the case.  (Docs. 400, 401.)  The Court subsequently entered an amended scheduling order resetting the trial for May 9, 2017.  (Doc. 415.)  On September 7, 2016—810 days after Sterling filed its motion for summary judgment—the Court granted in part and denied in part Sterling's motion.  (Doc. 419.)  In that same order, the Court also denied JTV's four-year-old motion for partial summary judgment. (*Id.*)

Trial of this matter began on May 11, 2017.  (Doc. 751.)  On June 8, 2017, the jury returned a verdict for JTV on both tort and contract claims.  (Doc. 814.)  After briefing on election of remedies, the Court entered its judgment on October 5, 2017, awarding JTV: (1) $13,000,000 for negligent misrepresentation; (2) prejudgment interest pursuant to Tennessee Code Annotated § 47-14-123 at the rate of 1.22% per year, totaling $1,350,053.64; and (3) postjudgment interest pursuant to 28 U.S.C. § 1961 at a rate of 1.22% per year, compounded annually.  (Doc. 868.)

On November 2, 2017, JTV moved to alter the judgment, arguing that the prejudgment interest rate was inadequate.[1]  (Doc. 870.)  JTV argued for a rate of 5.4% because that rate reflected JTV's average cost of debt capital from September 2008 through September 2017. (Docs. 870, 870-1.)  On January 9, 2018, the Court denied JTV's motion to alter the judgment, explaining that "equitable considerations—namely, the length of this litigation and delays not attributable to [Sterling]—merited awarding prejudgment interest at a rate significantly less than the [ten-percent] maximum permitted under Tennessee law."  (Doc. 879, at 4.)

On March 26, 2019, the Sixth Circuit vacated the Court's prejudgment-interest award and remanded the case to this Court for further proceedings consistent with its opinion.  (Doc. 916.)

## II.    ANALYSIS

Because this is a diversity action, "Tennessee law controls the award of prejudgment interest."  *Hickson v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 346 (6th Cir. 2005).  Tennessee law authorizes prejudgment interest up to a maximum rate of ten percent.  Tenn. Code Ann. § 47-14-123.  Guided by equitable principles, "an award of prejudgment interest is within the sound discretion of the trial court."  *Boynton v. Headwaters, Inc.*, 564 F. App'x 803, 817 (6th Cir. 2014) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).  The purpose of awarding prejudgment interest is "to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing."  *Id.*; *see also Gen. Constr. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513, 526 (Tenn. Ct. App. 2002).  Consistent with this rationale, the Tennessee Court of Appeals has held that a trial court's delay is not a reason to deprive a plaintiff of prejudgment interest,

---

[1] Before the Court entered its judgment, JTV only argued that the Court should award prejudgment interest at a rate of ten percent "in accordance with standard Tennessee practice." (Doc. 850, at 16.)

affirming prejudgment interest for a two-and-one-half-year period while the trial judge held the case under advisement after trial and before entering judgment. *Gen. Constr. Contractors Ass'n, Inc.*, 107 S.W.3d at 526. The Tennessee Court of Appeals noted that, "while it may seem unjust to [the defendant] that the meter continued to run on the accrual of interest during the time that the trial court held the case under advisement, it could be viewed as equally unjust to [the plaintiff] to discount the time in computing the total amount of damages due." *Id*.

The Sixth Circuit also does not endorse trial-court delays as a reason to reduce the prejudgment-interest award. Rather, to determine a fair prejudgment interest rate, trial courts are directed to consider: (1) the remedial goal of placing the plaintiff in the position it would have occupied absent the wrongdoing; (2) the prevention of unjust enrichment on behalf of the wrongdoer; (3) the lost interest value of money wrongly withheld; and (4) the rate of inflation. *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 807 (6th Cir. 2018); *see also Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013) (noting that "[o]ur court and others have . . . upheld awards of prejudgment interest that were tied to the prevailing market rates, thus reflecting what defendants would have had to pay in order to borrow the money at issue").

The lengthy delays in this case complicate the Court's decision on the appropriate prejudgment interest rate. The parties waited more than eight years to try this case, in part because the Court took: (1) almost seventeen months to rule on Sterling's motion to dismiss JTV's second amended complaint; (2) well over two years to enter a scheduling order; (3) almost two years to rule on Sterling's motion for summary judgment; and (4) almost four years to rule on JTV's motion for partial summary judgment. During the pendency of this litigation, the Court set five different trial dates over the course of five different years and stayed the case for

five months after it ordered the parties to mediation. After unsuccessful mediation, when ripe motions for summary judgment had been pending for years, a recusal order caused additional delays. In choosing an appropriate prejudgment interest rate, the Court must, in effect, decide who should bear the cost of the failure to "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

The remedial goal of a prejudgment-interest award is to put the plaintiff in the position it would have occupied absent the defendant's wrongdoing, i.e., to compensate JTV for the loss of use of $13,000,000 over the eight years it took to secure a jury verdict in its favor. Reducing the prejudgment interest rate because of the Court's delays works against this goal. Conversely, requiring Sterling to pay prejudgment interest for the entirety of the eight years this case was pending prior to the judgment—no matter what prejudgment interest rate is applied—is inequitable, given the Court's role in the delay.

Unfortunately, both Tennessee and Sixth Circuit precedent suggest that reducing a prejudgment-interest award based on the Court's delays is inappropriate. *See Pittington*, 880 F.3d at 807; *Gen. Constr. Contractors Ass'n, Inc.*, 107 S.W.3d at 526. But for Sterling's conduct, JTV would not have been wrongfully deprived of $13,000,000 for eight years. As a result, JTV should be compensated. JTV has submitted uncontroverted evidence that its "average annual cost of debt capital . . . expressed as an interest rate" during the pendency of this litigation was 5.4%, which is reasonably consistent with the average prime interest rate during that period of 3.36%.[2] Because the Court does not have the flexibility to discount a prejudgment-interest award due to its own delays, the Court awards JTV prejudgment interest at

---

[2] Calculated average prime interest rate is based on data provided by the United States Federal Reserve, available at https://www.federalreserve.gov.

a rate of 5.4%. While this award is inequitable to Sterling, given the mounting prejudgment interest attributable to the Court's delays, it does compensate JTV for the value of its loss of capital during the pendency of this litigation, prevents unjust enrichment of Sterling, and ameliorates the effects of inflation[3] on JTV's recovery.

## III.     CONCLUSION

For the reasons stated herein, the Court will enter an amended judgment awarding JTV $5,975,654.79 in prejudgment interest calculated at 5.4% per annum for the period beginning on April 3, 2009, the day JTV initiated this action, and ending October 5, 2017, the date the Court entered its original judgment. All other provisions in the Court's judgment dated October 5, 2017, will remain unchanged.

**SO ORDERED**.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[3] The U.S. Department of Labor estimates that $13,000,000 in April 2009 had the same purchasing power as $15,037,605 in October 2017. *See* Consumer Price Index Inflation Calculator, Bureau of Labor Statistics, U.S. Dep't of Labor, available at https://www.bls.gov/data/inflation_calculator.htm. Because the impact of inflation was less than JTV's average cost of capital during this period, there is no reason to make additional upward adjustments to the prejudgment-interest award. The use of JTV's cost of capital adequately compensates JTV.