IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., D/B/A/ JEWELRY TELEVISION, *Plaintiff*, v. STERLING COMMERCE (AMERICA), INC., *Defendant.* | ) ) ) ) ) ) ) ) | No. 3:09-cv-00143 Chief Judge Travis R. McDonough |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
<u>10% PREJUDGMENT INTEREST RATE</u>**

The argument by defendants Sterling and IBM (collectively, "Defendant") backing into a 1.22 % prejudgment interest rate, is an outcome-driven analysis that ignores the record, the harms JTV suffered from the loss of the $13 million judgment amount (<u>Dkt. 939</u>, 6-11("JTV's Brief")), and the directive to fully compensate JTV for the loss of use of its funds. The complete record, as well as statements and arguments made to the jury, tell the story of JTV's injuries from the lost use of the judgment amount. JTV's Brief, 9-11. Defendant makes a perfunctory day count of delays it claims are attributable to JTV, points to isolated events to the exclusion of others, and complains that the case has been unnecessarily protracted. But, when the complete record is examined, it is clear that there were no unreasonable, inexcusably dilatory, or abusive litigation practice delays, that both parties were actively litigating this matter through its pendency, and that Defendant did not take actions consistent with trying to push the case to quicker resolution.

The record also reveals that Defendant's litigation strategy was to overwhelm JTV with discovery, file defenses and claims it never intended to submit to a jury, and to be content with the Court's pace in handling the matter because delays favored the Defendant. Defendant never asked the Court to enter a Scheduling Order while its motion to dismiss was pending, yet now complains it took too long. Defendant resisted discovery, served 226 extensive document requests requiring

the production of millions of pages of documents, and convinced the Court to delay expert witness discovery. Defendant also conveniently ignores that it did not complete its own document production until some four years into the case and JTV was required to compel further productions thereafter. Defendant twice entered into joint motions for extensions of deadlines and trial dates (Dkt. 85; Dkt. 105)—not something a party does if it believes the case is being unusually delayed. Moreover, Defendant asks the Court to consider its same affirmative defense arguments made to and soundly rejected by the jury. This is as absurd as sending 226 document requests and then, years later, complaining about how long it took for production.

All the Court needs to examine is Defendant's return on capital to understand why it never challenged the Court's pace. Between 2010 through 2017, Defendant earned between 17% and 27.8% interest on its aggregate invested capital, resulting in earnings of over $25 million on the $13 million judgment funds. In July 2019, when the judgment amount was no longer in dispute, Defendant objected to payment and continued to enjoy a windfall. Dkt. 927; Dkt. 928. Even if ordered to pay prejudgment interest at the maximum rate allowed, Defendant will have still profited from the length of the litigation, eliminating any possible equity in its favor from delays.

Tennessee law requires that prejudgment interest fully compensate JTV for the loss of use of the judgment funds. Neither Defendant's suggested "baseline" 3.36% rate, nor the federal interest rate of 1.22%, are supported by the record as the amount necessary to fully compensate JTV for the loss of the $13 million judgment amount. Defendant cannot and does not even attempt to demonstrate that either rate is equitable. JTV has established that Defendant's misconduct damaged JTV's ability to operate, that it needed the judgment funds to operate its business, that it had no cash and no credit to replace the lost funds or the failed project, that it desperately needed

the failed Sterling software to weather the Great Recession, that Defendant fraudulently induced JTV into a failed project, and that the project failed due to Sterling's misconduct, as found by the jury. JTV's Brief, 9-11. Any award equal to or less than the prime rate would be inequitable to JTV and contrary to Tennessee law. JTV's Brief, 6-9.

Additionally, for the reasons stated herein, JTV objects to each of Defendant's Proposed Findings of Fact and Conclusions of Law (Dkt. 942) and asks the Court enter JTV's Findings of Fact and Conclusions of Law (Dkt. 940).

## I.     10% PREJUDGMENT INTEREST IS EQUITABLE TO ALL PARTIES.

Defendant suggests, without any analysis of equities, that either 3.36% or 1.22% is an appropriate prejudgment interest rate. Defendant has done nothing to show that either rate would fully compensate JTV for the lost use of the judgment amount. It has cited no evidence that JTV had additional borrowing capacity at any rate, much less the prime rate. In fact, the Sixth Circuit previously disapproved the blind application of the federal interest rate in this diversity matter. *America's Collectibles Network, Inc. v. Sterling Commerce (America), Inc*., 819 F. App'x 397, 402 (6th Cir. 2020) [hereinafter *Sterling II*]. What the evidence *does* show is that JTV suffered deprivation beyond just the prime rate or any other rate below 10%. JTV could not borrow funds at prime rate and suffered considerable additional losses during the recession because it had neither the judgment funds nor a functioning software system from Defendant to operate its business. JTV's Brief, 6-11. Under Tennessee law, the *Myint* decision "shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds." *Scholz v. S.B. Int'l, Inc.,* 40 S.W.3d 78, 83 (Tenn. App. Ct. 2001) (discussing *Myint v. Allstate Ins. Co*., 970 S.W.2d 920 (Tenn. 1998)).

3

Significantly, between 2010 and 2017, Defendant earned millions on huge rates of returns on invested capital (ROIC) by investing its aggregate invested capital, which can easily be applied to the $13 million judgment funds:

| ROIC Period | ROIC | Uncompounded Returns on $13m |
|---|---|---|
| 1/1/10-12/31/10 | 23.6% | $ 3,068,000 |
| 1/1/11-12/31/11 | 27.6% | $ 3,588,000 |
| 1/1/12-12/31/12 | 27.5% | $ 3,575,000 |
| 1/1/13-12/31/13 | 27.8% | $ 3,614,000 |
| 1/1/14-12/31/14 | 27.5% | $ 3,575,000 |
| 1/1/15-12/31/15 | 24.9% | $ 3,237,000 |
| 1/1/16-12/31/16 | 22.6% | $ 2,938,000 |
| 1/1/17-10/5/17 | 17.0% | $ 1,677,178 |
| | | $ 25,272,178 |

*See* Ex. A to Ex. H, attached to JTV's Brief. Notably, Defendant's total monetary benefit from its investment of the JTV funds is almost twice the amount JTV would be paid on a 10% interest rate for the same time period. The equities demand a rate higher than 10% if Tennessee law permitted.

Further, the Court should reject Defendant's attempts to discount the interest rate based on its effort to relitigate its claim that JTV contributed to its own losses. Defendant's assertions that JTV should not have bought inventory, redeemed stock, purchased an airplane, and on and on, were argued to the jury and considered in the jury's award. The jury ultimately rejected Defendant's affirmative defense that JTV prevented Defendant's performance. Dkt. 814. Defendant's citation to *Hitchcock Metal Sources, Inc. v. Mulford,* No. E2003-00738-COA-R3-CV, 2004 WL 178390, at *7 (Tenn. Ct. App. Jan. 29, 2004) does not support its argument that JTV's financial decisions dictate a discount of the interest rate. *Hitchcock* applies only to an interest award where the plaintiff failed to properly pursue its claims against defendant. *Id.* That is not the case here, as JTV has demonstrated that it timely filed its lawsuit against Defendant. *See* JTV's Brief, 11. No adjustment to the interest rate should be made based on these arguments.

4

Lastly, despite *Myint* specifically rejecting the approach, Defendant continues to argue that the "reasonably disputed" test and the "uncertainty of JTV's damages" test should be applied to reduce the pre-judgment interest rate. *See Myint*, 970 S.W.2d at 927-28. The test as established by *Myint* is *not* whether the parties agreed on a fixed or liquidated amount. Instead, the proper test is whether the amount of damages is ascertainable by computation or by any recognized standard of valuation. *Id.* at 927-29; JTV's Brief, 12-13. Here, an examination of the record demonstrates that JTV's damages were ascertainable by recognized standards of valuation, and neither the basis nor the amounts were disputed by expert testimony to the contrary. JTV disclosed damages based on projections prepared by JTV's finance department in initial disclosures, and, as the litigation progressed, JTV's calculations changed as actual numbers were substituted for projections. This information, along with a tremendous volume of information about JTV's operations and finances, was provided to JTV's damages expert, who calculated and testified about JTV's damages in accordance with accepted accounting and valuation standards. *See* JTV's Brief, 9; Dkt. 908 at 35-36. There is ample proof in the record of the $13,813,794 million reliance damage amount, as well as the $42,793,133 benefit-of-the-bargain damage amount.

## II. THE PARTIES ACTIVELY LITIGATED THIS MATTER WITHOUT ANY UNREASONABLE DELAYS BY JTV OR THE COURT.

Defendant has failed to demonstrate any unreasonable delays, abusive litigation practices, or inexcusably dilatory practices causing delays on the part of JTV or the Court, as required under Tennessee law. *Sterling II*, 819 F. App'x at 402; *Scholz,* 40 S.W.3d at 83; *see also Poole v. Union Planters Bank, N.A.,* 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010). Moreover, Defendant's argument that it lacks any responsibility for the total time to get to trial is disingenuous because its litigation strategy was a significant factor in increasing the time of litigation. This included a

5

motion to dismiss that was denied; extensive discovery requests requiring JTV's production of over 2.5 million pages of documents; production of its own documents four years after JTV's complaint; delayed expert witness discovery; sixteen affirmative defenses, which were ultimately withdrawn or rejected by the jury; and a 162-paragraph counterclaim with seven counts for unspecified damages, all of which were withdrawn during trial. Now that the time to pay has finally arrived, Defendant should be estopped from complaining about the time taken to litigate.

**A.  Alleged Delay Related to Pleadings and Motion to Dismiss Ruling (6/19/09-12/7/09; 1/15/10-5/26/11; 7/18/11-8/22/11).**

Defendant asks the Court to deduct 657 days from the total prejudgment interest period for time while its motion to dismiss was being prepared or pending, but fails to establish any unreasonable, extraordinary, or dilatory delays by JTV or the Court during this time. Indeed, each act Defendant complains of was permitted by the Federal Rules or the Court. JTV amended its complaint once as a matter of right before Defendant filed a responsive pleading and filed another with leave of Court following Defendant's motion to dismiss. Neither event is unreasonable or unusual. JTV's Second Amended Complaint pled more specific allegations of fraud to address issues raised in Defendant's motion. Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its complaint so that the facts are clearly stated, allowing the Court to rule on the merits of the claim. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In line with Rule 15(a)(2), JTV's amendments responded to Defendant's argument of lack of specificity by pleading more specific allegations of fraud. Dkt. 27; Dkt. 28; Dkt. 29. The Court rejected Defendant's argument opposing the Second Amended Complaint. Dkt. 30; Dkt. 31.

Defendant also complains that the Court took over two years to enter a Scheduling Order but fails to mention that Rule 16(b)(2) allows entry of a Scheduling Order after the proscribed

6

timeframes "upon good cause." Defendant never asked the Court to enter an order or permit it to conduct discovery during this time. Instead, Defendant embraced the extended briefing period as part of its litigation strategy, agreed to extensions of time for JTV to respond to its motion, and filed its own motion for extension of time to file a reply. Dkt. 21; Dkt. 24.

Similarly, Defendant complains about a 35-day extension for JTV to answer its counterclaim while ignoring Sterling's 21-day extension to respond to the Complaint. Dkt. 7. Defendant also ignores that extensions to answer claims are commonplace and that it agreed to these extensions. Dkt. 58; Dkt. 59; Dkt. 60. Indeed, Defendant's counterclaims were not mentioned in opening argument, not supported by witness testimony, and eventually abandoned. Dkt. 912 at 21. Defendant's counterclaims increased the complexity of the litigation and required extensive discovery, but it is now clear that Sterling had no intention of pursuing any counterclaim at trial. Any purported delay from those counterclaims should not be considered by the Court.

Additionally, Defendant suffered no prejudice in the litigation by agreeing to these extensions, and Defendant did not consent to any extension under the condition that it would not have to pay prejudgment interest for the time period after JTV prevailed. In reality, this entire period benefitted Defendant because every delay postponed its obligation to pay the judgment.

B. **Alleged Delay During Discovery (8/5/13-2/10/14; 2/10/14-10/27/14; 2/17/14-6/20/14).**

Defendant's argument that the Court should not award interest during certain discovery time periods ignores the extensive time needed to respond to Defendant's aggressive discovery practices, fails to mention that Defendant did not complete its own production until after February of 2013, and brushes off its agreement to each discovery extension and new trial date. Defendant also mistakenly counts these three periods as 581 days by double counting 133 days (2/17/14 to

6/10/14), presumably in an effort to bolster its argument for delay.

First, simply because JTV needed time to complete production does not establish an unreasonable delay or that it was dilatory. The parties jointly told the Court in March of 2013 that they had "engaged in significant discovery efforts since late 2011." Dkt. 144, at 2. The extensive scope and time necessary for discovery is reflected in Defendant's five sets of requests for production: its First Set, served on November 14, 2011, included 133 requests (Dkt. 443-5); its Second Set, served on April 5, 2012, included 23 requests (Dkt. 443-6); its Third Set, served on June 20, 2012, included 37 requests (Dkt. 443-7); its Fourth Set, served on March 29, 2013, included 15 requests (Dkt. 443-8); and its Fifth Set, served on August 27, 2014, included 18 requests (Dkt. 443-19). To respond to these expansive requests, JTV had to search and review its many repositories of information and produce millions of pages in multiple waves. Defendant should not blame JTV for its diligent efforts to comply with voluminous discovery requests.

Moreover, in arguing for no interest during this period, Defendant wholly ignores that it agreed to each discovery extension and new trial date. On July 30, 2012, the parties jointly requested the Court extend the discovery deadline and trial date by six months because "*neither party had completed its document production.*" Dkt. 85. The parties noted they "could not determine specifically when document production by both sides will conclude." Dkt 85. In March 2013, the parties again *jointly* asked the Court to extend the discovery deadline, asked to reset the trial to October 27, 2014, and advised that the parties agreed not to conduct depositions until after document production. Dkt. 144, at 3, 6. JTV told the Court it anticipated finishing its production of 150,000 documents by April 30, 2013, and Defendant told the Court it completed its production of 30,000 documents *only one month prior*. Dkt. 144, at 3. However, Defendant was not done

8

with its document production as represented, as the Court soon thereafter ordered Defendant to produce documents about similar projects. Dkt. 146; Dkt. 198; Dkt.219. This additional discovery led to significant trial testimony and a jury verdict in JTV's favor. *See* Dkt. 908, 4-10, 13-21. Any suggestion that JTV unreasonably caused inexcusably dilatory delay is simply not true.

C.  **Alleged Delays Related to Summary Judgment Motion Ruling (10/2/13-9/7/16).**

The circumstances surrounding the summary judgment ruling were fully addressed in JTV's Brief. JTV's Brief, 16-18. The parties engaged in extensive briefing on the merits of the motion and the Court recognized the complexity of the issues when it ordered the parties to mediation. This is not unusual or extraordinary in complex, hard-fought litigation. To allow Defendant a reduced prejudgment interest rate during that time frame would be inequitable and unfair to JTV and result in a windfall to Defendant. Indeed, Defendant's authority, *Foster-Henderson v. Memphis Health Center, Inc.,* 479 S.W.3d 214 (Tenn. Ct. App. 2015), is inapposite and does not support a reduction of interest for JTV. In *Foster-Henderson*, the trial court decision disallowing pre-judgment interest was reversed except as to a time period that the plaintiff did not participate in the lawsuit at all. *Id.* at 229. In the present case, JTV has actively litigated this matter throughout the entirety of its pendency.

The Court should also reject Defendant's request that the Court take judicial notice of a "median time" for disposition of unidentified and unknown cases. Defendant has provided no data demonstrating the comparability and relevance of these cases and statistical information, which also include voluntary dismissals and settlements not tailored to this case. The only way to compare relevant cases is to identify those that involved separate contracts, tens of millions of dollars in controversy, millions of pages of discovery, complex and highly-technical claims and

9

counterclaims, and whether the case was resolved by a trial lasting sixteen days or more, or at least some combination of the unique factors of this case. For example, Defendant complains that the time for the Court to rule on its motion for summary judgment was longer than the "median time," but it fails to compare the complexity of the legal and factual issues in the "median time" motion with its own complex motion. Defendant's superficial view that all cases are the same is baseless.

Importantly, court statistics recognize that Judge Jordan's average disposition time is comparable to other Eastern District judges and confirms that he acted timely based on specific case requirements. Most cases in the Eastern District are disposed of by uncontested dismissal or settlement and are not highly contested to verdict. A mechanical calculation of days to disposition showing this matter took longer than the "median time" does not mean that the Court or JTV unreasonably delayed the proceedings. Notably, other judges in the Eastern District have had lawsuits pending for periods longer than this matter.[1]

### III. CONCLUSION

Both law and equity allow the Court to set the prejudgment interest rate at the maximum rate under Tennessee law to prevent further unjust enrichment and to fully compensate JTV for the loss of use of the judgment funds. In any event, Defendant's rate of return on JTV's funds during this lawsuit was more than double the rate JTV seeks to be equitably compensated. Considering the equities as a whole and with emphasis on the requirement to fully compensate JTV for its lost use of funds, this Court should set the prejudgment interest rate at 10%.

---

[1] By way of example and not limitation, *see Shoffner, et al v. CSX Transportation et al*, Case No. 4:01-cv-00054 (pending with Judge Carter for 4,850 days from filing to dismissal); *Vance v. Wade, et al*, Case No. 2:00-cv-00123 (pending with Judge Inman for 3,895 days from filing to verdict); *National Parks, Inc, et al v. TVA*, Case No. 3:01-cv-00071 (pending with Judge Varlan for 3,333 days from filing to verdict); *Forgety v. Jefferson County School Board Commissioners et al*, Case No. 3:04-cv-00275 (pending with Judge Collier for 3,302 days from filing to verdict).

Respectfully submitted this 12th day of February, 2021,

/s/ David J. Shapiro
David J. Shapiro (DS8639)
THE LAW OFFICES OF
DAVID J. SHAPIRO, P.C.
43 West 43rd Street, Suite 45
New York, NY 10036
212-709-8047 (Telephone)
917-210-3236 (Facsimile)
dshapiro@shapirojuris.com

/s/ W. Edward Shipe
W. Edward Shipe, BRP #23887
BROCK SHIPE KLENK PLC.
265 Brookview Centre Way, Suite 604
Knoxville, Tennessee 37919
(865) 338-9700
eshipe@bskplc.com

/s/ Jim Wetwiska
Jim Wetwiska, admitted *pro hac vice*
Holli Pryor-Baze, admitted *pro hac vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
713-220-5899 (Telephone)
713-236-0822 (Facsimile)
jwetwiska@akingump.com
hpryorbaze@akingump.com

*Counsel for Plaintiff America's Collectibles, Inc., d/b/a/ Jewelry Television®*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2021, I electronically filed the foregoing document using the CM/ECF system of the United States District Court for the Eastern District of Tennessee.

*/s/ Edward Shipe*