# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| AMERICA'S COLECTIBLES NETWORK, INC., d/b/a JEWELRY TELEVISION, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:09-cv-143<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge H. Bruce Guyton |
| *Plaintiff*, | | |
| v. | | |
| STERLING COMMERCE (AMERICA), INC., | | |
| *Defendant*. | | |

## ORDER

On July 24, 2020, the United States Court of Appeals for the Sixth Circuit reversed the Court's award of prejudgment interest and remanded the case "with instructions to determine an equitable rate of prejudgment interest" in accordance with its opinion. *Am's Collectibles Net., Inc. v. Sterling Com. (Am.), Inc.*, 819 F. App'x 397, 398 (6th Cir. 2020). The only question left for the Court to resolve is the equitable prejudgment-interest rate under Tennessee law.

On December 10, 2020, the Court ordered the parties to file additional briefing regarding the appropriate prejudgment-interest rate along with proposed findings of fact and conclusions of law, which the parties have done. (*See* Docs. 939–946.) For the following reasons, the Court will award Plaintiff America's Collectibles Network, Inc. d/b/a Jewelry Television ("JTV") prejudgment interest calculated at a rate of 3.25% per annum.

## I.  STANDARD OF LAW

In diversity actions, state law governs prejudgment interest. *Am.'s Collectibles*, 819 F. App'x at 402.  Under Tennessee law, prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum."  Tenn. Code. Ann. § 47-41-123.  "[T]he purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize the defendant for wrongdoing."  *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  In determining whether to award prejudgment interest, courts consider principles of equity, including:

> (1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money.

*Am.'s Collectibles*, 819 F. App'x at 402 (quoting *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010)).  Awarding prejudgment interest, however, "may not be appropriate (1) when the party seeking prejudgment interest has been so excusably dilatory in pursuing a claim that consideration of that claim based on loss of use of the money would have little weight; (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed; or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money."[1]  *Id*. (quoting *Scholz v. S.B. Int'l, Inc.*, 40 S.W. 3d 78, 83 (Tenn. Ct. App. 2000)).  In the decision vacating the Court's prejudgment-interest award, the Sixth Circuit explained that, under Tennessee law, the Court can consider its own "unusual or extraordinary" delays in determining an equitable prejudgment

---

[1] The Sixth Circuit held that the Court did not abuse its discretion in awarding prejudgment interest in this case.  *Am.'s Collectibles*, 819 F. App'x at 404, n.2.

interest rate. *Id*. But it also held that this Court "need not reduce the prejudgment interest rate . . . with respect to any portion of the delay that is attributable to the parties." *Am.'s Collectibles*, 819 F. App'x at 404.

## II. ANALYSIS

As the Sixth Circuit has explained, Tennessee law permits a trial court to use its discretion to reduce a prejudgment interest award based on court-caused delays that are "unusual" or "extraordinary." *Id.*; *see also Cook's Roofing, Inc. v. Hartford Underwriters Ins. Co.*, No. W2019-00271-COA-R3-CV, 2020 WL 4151216, at *17 (Tenn. Ct. App. July 20, 2020) ("The trial court's discretion extends not only to awarding prejudgment interest but also to the amount of interest allowed and the time over which it shall be calculated." (cleaned up)). Under Tennessee law, setting prejudgment interest at a rate as low as one percent per annum based on the unusual duration of the litigation does not constitute an abuse of discretion. *See Cook's Roofing,* 2020 WL 4151216, at *18. For example, in *Cook's Roofing*, an insured sued its insurer after the insurer's audit determined that the insured owed retrospective insurance premiums. *Id.* at *1. The insured initiated its action against the insured in 2007, and, after filing, "[t]he case languished in the trial court for years." *Id.* at *5. Sometime thereafter, the trial court entered a scheduling order providing a June 2014 deadline for depositions of fact witnesses. *Id.* In July 2014, the insured filed a motion to file a second amended complaint and to modify the scheduling order, which the trial court denied. *Id.* In October 2018, the insurer filed a motion for summary judgment for premiums owed between 2005 and 2007, which the trial court ultimately granted. *Id.* at *6. After granting summary judgment, the trial court entered an order awarding prejudgment interest to the insurer, although "for a shorter period of time than [the insurer] requested, and at a rate of only one percent." *Id* at *8.

3

Although the Tennessee Court of Appeals vacated the trial court's grant of summary judgment as to premiums owed from 2006 to 2007 and the corresponding prejudgment-interest award, it affirmed the trial court's grant of summary judgment as to the premiums owed from 2005 to 2006 and addressed the insured's argument that the trial court erred in limiting its award of prejudgment interest to a shorter period than requested and at a rate of only one percent. *Id* at *16–18. In affirming the trial court's award of prejudgment interest attributable to the premiums owed from 2005 to 2006, the Tennessee Court of Appeals explained that "[c]onsidering the long duration of this litigation and that both parties and the trial court were to some degree responsible for the delay, we cannot say that the trial court abused its discretion in deciding to award prejudgment interest but limit the award to a period of two years and at a rate of only one percent." *Id*. at *18.

In this case, the Court's extraordinary and unusual delays justify an award of prejudgment interest at a rate significantly less than the maximum of ten percent allowed under Tennessee law.[2] Rarely does it take eight and one-half years (or 3107 days) to steer a case from filing to judgment in this district. In fact, since 1987, only 19 cases out of the 18,776 cases filed here have taken longer to resolve. *See Westlaw Litigation Analytics for the U.S. Dist. Ct. for the E.D. Tenn.*, http://www.next.westlaw.com/Analytics (last visited April 23, 2021). And the median time to dispose of comparable cases is a mere fraction of the lifespan of this case: 287

---

[2] The "equitable factors" identified in *Poole* and *Scholz* guide courts in determining whether to award prejudgment interest. While these factors confirm that awarding prejudgment interest in this case is appropriate, they are less useful in selecting an appropriate prejudgment interest rate, because these factors do not militate strongly in favor of either party and because the Sixth Circuit has instructed that the Court "need not" reduce the prejudgment interest rate "with respect to any portion of the delay that is attributable to the parties." *Am.'s Collectibles*, 819 F. App'x at 404.

days for contract cases (about 9% of the duration here) and 345 days for tort cases (about 11%). *Id*.

The Court caused a significant portion of this delay. For example, it took: (1) 496 days to rule on Sterling's motion to dismiss JTV's second amended complaint (*see* Docs. 39, 52);[3] (2) 203 more days to enter a scheduling order after ruling on Sterling's motion to dismiss JTV's second amended complaint (*see* Docs. 52, 65); and (3) 706 days to rule on the parties' cross-motions for summary judgment (*see* Docs. 87, 258, 419).[4] Such delays, while not an exhaustive list, are extraordinary and unusual. A more typical approach on these three issues alone would have shortened the length of this litigation by three years. Other common steps would have reduced the lifespan of this case by that length of time again or even more.[5]

---

[3] This time period is calculated based on the time between when Sterling filed its reply in support of its motion to dismiss and the Court's ruling. The parties' subsequent supplemental briefing does not explain this delay.

[4] This time period is calculated based on the time between when Sterling filed its reply in support of its motion for summary judgment (October 2, 2014) and the Court's ruling (September 7, 2016). This time period, however, does not reflect that JTV's motion for partial summary judgment was fully briefed on November 27, 2012—almost four years before the Court ruled on it. (*See* Doc. 109.) Additionally, this 706-day period includes an 111-day delay resulting from court-ordered mediation (Doc. 346) and additional delays following an order of recusal once mediation failed. (Doc. 400). JTV implicitly acknowledges this lagging pace by contrasting it with the Court's approach in 2016 and 2017 (*See* Doc. 939, at 17.)

[5] The parties' litigation tactics also magnified the effects of case-management decisions. For example, one month after the parties completed briefing on Sterling's motion to dismiss JTV's first amended complaint (*see* Doc. 26), JTV filed a motion for leave to file a second amended complaint (*see* Doc. 27), which the Court granted, resulting in additional briefing when Sterling moved to dismiss the second amended complaint (*see* Doc. 33). The Court elected not to enter a scheduling order until after resolving Sterling's motion to dismiss. (Doc. 65.) As a result, discovery did not begin in earnest until the case was already more than two and one-half years old. (*See* Doc. 65.) Similarly, the parties filed numerous discovery-related motions, including a motion to reopen discovery filed by JTV after discovery closed. (*See* Docs. 229, 245). As a result, discovery lasted for more than two years after the Court entered its scheduling order and was not complete until almost five years after this case was filed. (*See* Docs. 1, 65, 245).

While fairness requires compensating JTV for its loss of use of funds during the pendency of this litigation, requiring Sterling to pay prejudgment interest for the period from filing to judgment at a rate of ten percent, as urged by JTV, would be an inequitable result given the unusual and extraordinary Court-caused delays. Accordingly, awarding prejudgment interest at a rate of 3.25%[6] will appropriately and equitably compensate JTV for its loss of use of funds while at the same time avoid inappropriately penalizing Sterling.[7]

## III. CONCLUSION

For the reasons stated herein, the Court will enter an amended judgment awarding JTV $3,596,458.90 in prejudgment interest calculated at 3.25% per annum for the period beginning

---

[6] The Sixth Circuit's instruction that the Court "need not reduce the prejudgment interest rate . . . with respect to any portion of the delay that is attributable to the parties" complicated the Court's task of selecting an equitable prejudgment interest rate "in accordance" with the Sixth Circuit's opinion. The Court could interpret this language as instructing it not to consider delays caused by the parties, but such an instruction appears inconsistent with the Tennessee Court of Appeals's holding in *Cook's Roofing*, which affirms a significant reduction of the prejudgment interest rate based upon the "long duration of this litigation and the fact that both parties and the trial court were to some degree responsible for the delay." *Cook's Roofing,* 2020 WL 4151216, at *18; *see also Poole*, 337 S.W.3d at 791 (instructing courts to consider unreasonable delay of the proceedings by either party and abusive litigation practices by either party in determining whether to award prejudgment interest). Alternatively, the Court could interpret "need not" as suggesting that the Court retains discretion to reduce the prejudgment interest award based on delays attributable to the parties, but such an interpretation appears inconsistent with the plain language of the Sixth Circuit's opinion. The Court's selection of a 3.25% prejudgement interest rate is based on the extraordinary and unusual court-caused delays in this case and not delays attributable to the parties. While other unnecessary delays occurred, they played a comparatively minor role and were largely intertwined with the court-caused delays.

[7] The Court acknowledges that the Tennessee Court of Appeals has previously affirmed prejudgment interest awards calculated at ten percent despite unusually lengthy litigation. *See e.g.*, *Coffey v. Coffey*, No. E2020-00157-COA-R3-CV, 2020 WL 6277433 (Tenn. Ct. App. July 23, 2020) (affirming a prejudgment interest award calculated at ten percent for litigation lasting twenty-three years). The trial court in *Coffey* exercised its discretion and decided not to reduce the prejudgment interest award based on the length of the litigation. That same discretion afforded under Tennessee law, however, allows this Court to reduce the prejudgment interest award based on the extraordinary and unusual court-caused delays in this case. *See Cook's Roofing,* 2020 WL 4151216, at *16–*18.

on April 3, 2009, the day JTV initiated this action, and ending October 5, 2017, the date the Court entered its original judgment. All other provisions in the Court's judgment dated October 5, 2017, will remain unchanged.

    **SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**